BURTON T. WEST *vs*. MOLDERS FOUNDRY CO., INC.

Middlesex.    December 6, 1960. — February 6, 1961.

Present: WILKINS, C.J., SPALDING, WILLIAMS, CUTTER, & KIRK, JJ.

*Workmen's Compensation Act*, Action against third person. *Pleading, Civil*, Answer. *Negligence*, Invited person, Duty to warn, Piled scrap metal.

In reading the pleadings to the jury at the trial of an action by a workman for personal injuries against one other than his employer, the plaintiff's counsel was properly permitted to omit reading an allegation in the answer that the plaintiff had received compensation under the workmen's compensation act.    [9–10]

A truck driver, who delivered a load of scrap iron at the premises of a foundry, parked his truck at a location thereon indicated by employees of the foundry, and was standing beside the truck watching the employees unload it when he was injured, had the status of a business invitee of the proprietor of the foundry.    [12]

Evidence of the circumstances in which a truck driver, after taking a load of scrap iron to foundry premises, was standing beside the truck, watching it being unloaded, close to a large, heavy metal tank resting on the top of a pile of scrap when he was struck in the back and

knocked to the ground warranted findings that the tank moved and struck him and that the proprietor of the foundry failed in a duty to warn him of the danger arising from the precarious position of the tank on top of the pile and was negligent toward him.   [12–13]

TORT.   Writ in the Superior Court dated June 10, 1954. The action was tried before *Morton, J.*

*Michael T. Prendergast & Francis K. Monarski,* for the defendant, submitted a brief.

*Joseph W. Lobdell,* for the plaintiff.

KIRK, J.   This is an action of tort for personal injuries which the plaintiff contends he sustained as the result of the negligence of the defendant when he was allegedly struck by a steel "tank or tub" on the premises of the defendant.   The case was submitted to a jury who returned a verdict for the plaintiff.   The case is here on the defendant's exceptions (a) to the ruling of the judge which permitted the plaintiff's counsel to omit reading to the jury a paragraph of the defendant's amended answer which averred that "the plaintiff received workmen's compensation payments"; and (b) to the denial of its motion for a directed verdict.

There was no error.   As to the first exception, an employee who has received compensation may bring an action in his own right against a third party under the provisions of G. L. c. 152, § 15, or the insurer may enforce the liability in the employee's name.   In either case, it is settled that the plaintiff has "the right to have the case tried without reference to any matters which might be prejudicial or irrelevant."   *Chaves* v. *Weeks,* 242 Mass. 156, 158, where the court ordered struck from the defendant's answer an averment that the plaintiff had received compensation under the Workmen's Compensation Act.   See also *Becker* v. *Eastern Mass. St. Ry.* 279 Mass. 435, 442, 443; *Murray* v. *Rossmeisl,* 284 Mass. 263, 267.   The defendant has argued to us that it was entitled to show the jury that the plaintiff's absence from work was prolonged by the fact that he would be paid if he did not work, although able to work.   See *McElwain* v. *Capotosto,* 332 Mass. 1, 2.   This at most was

a question of evidence on the issue of damages, and not a matter of pleading.

The motion for a directed verdict was properly denied. We apply the familiar rule: "If upon any reasonable view of the evidence there is found any combination of circumstances from which a rational inference may be drawn in favor of the plaintiff, then there was no error in the denial of the motion, even if there may be other and different circumstances disclosed in the evidence which, if accepted as true by the jury, would support a conclusion adverse to the plaintiff." *Howes* v. *Kelman,* 326 Mass. 696, 696–697.

The jury could find that the following facts were established by the evidence. The plaintiff was a truck driver. On September 25, 1953, he delivered for his employer a load of scrap iron to the defendant whose business was melting and molding iron into castings. The plaintiff had undergone an operation and was unable to do any lifting, a fact which was known to the defendant and to the plaintiff's employer. The defendant assigned two of its employees to unload the truck. The plaintiff followed their instructions as to where to go. He first went to one part of the defendant's premises where the lighter scrap was unloaded by the defendant's employees. This took one half hour. He then drove the truck to another location on the premises, pursuant to the instructions of the defendant's employees, where the remainder of the load, heavy pieces of scrap iron, was to be deposited. He parked the truck where he was told to park it. The ground to the rear of the parked truck was level. There was no scrap on it. On the driver's side of the truck there was a pile of scrap about two or three feet high, five to twelve feet long, and four to twelve feet deep. The base of the pile was less than one foot from the truck. Standing upright on its base on the top of this pile was a corroded metal tank or tub which had been in the defendant's yard for years. The dimensions of the tank were roughly four by five or five by seven feet, and about four feet deep. The metal was approximately one half or one inch thick. It weighed between 800 and 1,200 pounds.

It was resting about three feet above the ground on discarded mold boards, or oblong wooden forms, which were six or seven feet long and five or six feet wide. The plaintiff got out of the truck on the driver's side and went as far as the rear wheel, so that he could watch to see that no damage was done to the truck when it was being unloaded. He had done the same thing at the first location. When he took his position beside the truck, the tank or tub was two feet behind him. No other person was within seventy-five feet of the place where he and the two men were. The men inched the heavy pieces of metal off the truck with pinch bars. The last piece weighed about 400 pounds and was about four feet long, eight inches wide, and eighteen inches deep. When it was pushed off something happened to the plaintiff. He was struck in the area of his back around the waist, and was thrown to the ground. When he was on the ground he saw that the tank had moved toward him. He could not say how it had moved, but before the accident it was parallel to the truck, and now it was "kitty corner." Another witness testified that the tank was probably a foot or so from the plaintiff's body when he saw the plaintiff lying on the ground. The plaintiff had been to the defendant's premises before, but all he had ever taken in his truck were wooden patterns which were light, and occasionally a small defective casting. He had never been to the particular area where the accident took place, and was unfamiliar with the way scrap metal or pig iron was unloaded and piled. The employees of the defendant unloaded the foundry's trucks and at times helped to unload customers' trucks. They used their own judgment as to where and how to pile the scrap which was usually "just thrown in ... [a] pile." No warning was given to the plaintiff. He had knowledge of the dangers connected with unloading junk in a scrap pile and wanted to keep out of the way; he saw nothing around the unloading place that indicated to him he was likely to be injured. He thought the vibration from unloading the last heavy piece caused the tank to move.

The jury could find that the plaintiff was on the defendant's premises as an invited person, *LeBlanc* v. *Atlantic Bldg. & Supply Co. Inc.* 323 Mass. 702, 703, and was acting within the scope of the invitation extended to him. *Adams* v. *George Lawley & Son Corp.* 314 Mass. 87, 89. In these circumstances it is the duty of the landowner to use reasonable care to keep the premises in a reasonably safe condition for his use according to the invitation extended to him; or at least to warn him of dangers not obvious to the ordinary person but which are known or should be known to the landowner. *LeBlanc* v. *Atlantic Bldg. & Supply Co. Inc.*, *supra*, at page 705, and cases cited. The jury were warranted in finding that the defendant knew or should have known that the tank was in a precarious position atop the scrap pile; that it was likely to slide, slip or fall; that this was a danger not obvious to others; and that the defendant failed in its duty to warn the plaintiff.

The defendant's main contention is that the plaintiff has not proved what caused the tank to move; that the cause has been left to conjecture and surmise. *Childs* v. *American Exp. Co.* 197 Mass. 337, 338. *Fucci* v. *W. W. Welch, Inc.* 329 Mass. 467. These cases and others cited by the defendant (of which *Rankin* v. *Brockton Pub. Mkt. Inc.* 257 Mass. 6, 10, and *Gilmore* v. *Kilbourn,* 317 Mass. 358, are examples) are distinguishable in that none of them discloses any act by the defendant which created a dangerous situation requiring the defendant to warn third persons of the danger. In the case before us the jury could have found that the acts of the defendant had created and permitted to continue a situation dangerous to persons like the plaintiff to whom no warning had been given. It is settled "that to make out liability on the part of a defendant it is enough to prove that the probable consequence of his acts was that harm of the same general character as that which came to the plaintiff would come to persons who stood in the same general relation to the defendant as the plaintiff; and that it is not necessary to make out liability on a defendant's part that the particular series of events which ended in the

injury to the plaintiff were the probable consequences of the defendant's acts." *Ogden* v. *Aspinwall,* 220 Mass. 100, 103. *Marshall* v. *Carter,* 301 Mass. 372, 377–378. To the same effect are *Koczur* v. *Flanagan,* 306 Mass. 121, 123–124, and *Conley* v. *Morash,* 307 Mass. 430, 432–433. See Restatement: Torts, § 433, comment e.

From the permissible findings that the tank had moved toward the plaintiff, and that the plaintiff had been struck in the back around his waist before he fell, coupled with the dimensions of the tank, the jury could reasonably infer that it was the tank which struck the plaintiff and caused him to fall.

*Exceptions overruled.*