JACKSON v. SABUCO

1. TRIAL — PRETRIAL — EVIDENCE — EXHIBITS — PRODUCTION — AUTHENTICITY — COURT RULE.

All proposed exhibits which are in the possession of the parties' attorneys and which either support the main case or the defense, must be produced at a pretrial conference and their authenticity must be admitted whenever possible (GCR 1963, 301.1[7]).

2. TRIAL — PRETRIAL — EVIDENCE — EXHIBITS — OMISSION — ADMISSIBILITY — DISCRETION.

Admission of a defense exhibit, omitted from the pretrial conference, was not an abuse of discretion where plaintiffs' counsel did not attempt at trial to call the court's attention to the omission of that exhibit from the pretrial summary, did not show how that omitted exhibit had prejudiced the plaintiffs, and did not raise his allegations of surprise and prejudice regarding the omitted exhibit until appeal (GCR 1963, 301.1[7]).

3. TRIAL—EVIDENCE—PRETRIAL—OMITTED EXHIBITS—ADMISSIBILITY —DISCRETION.

Admission into evidence of exhibits not presented at a pretrial conference and not objected to at trial is within the discretion of the trial judge.

---

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 53 Am Jur, Trial § 11.
[4] 29 Am Jur 2d, Evidence § 785 et seq.
[5] 29 Am Jur 2d, Evidence § 819.
[6, 9] 5 Am Jur 2d, Appeal and Error § 545.
[7] 22 Am Jur 2d, Damages §§ 70, 206-211.
[8] 22 Am Jur 2d, Damages §§ 93, 97, 99, 296, 298, 313, 314.
[10] 53 Am Jur, Trial § 463 et seq.
[11] 53 Am Jur, Trial § 123.
[12, 13] 53 Am Jur, Trial §§ 559, 633, 749.

4. TRIAL—EVIDENCE—EXHIBITS—FACSIMILE—TESTIMONIAL AID—ADMISSIBILITY.

> Use of an exhibit, clearly identified as a facsimile, except for color, of a step edging on which plaintiff tripped, was properly allowed as a testimonial aid to help the jury more clearly understand the evidence.

5. TRIAL—EVIDENCE—VISUAL AIDS—USE—DISCRETION.

> Permitting defense counsel to make a blackboard sketch while cross-examining plaintiff was not error since the use of visual aids during trial is within the trial judge's discretion.

6. TRIAL—EVIDENCE—PHOTOGRAPHS—OBJECTIONS—APPEAL AND ERROR.

> Failure to object to the introduction in a negligence action of photographs which were taken some time before the date of plaintiff's accident precludes review on appeal.

7. DAMAGES—EVIDENCE—WITNESSES—INCOME—COLLATERAL SOURCE.

> Defendants' inquiry into plaintiff's receipt of social security benefits did not violate the rule that evidence of money or benefits received from a collateral source may not be introduced by a tortfeasor to effect a reduction of damages, where those social security payments were specifically labeled retirement benefits and there was no intimation that those payments were intended to compensate plaintiff for her injuries.

8. DAMAGES—EVIDENCE—DECREASED EARNINGS—PROXIMATE CAUSE.

> That a decrease in plaintiff's earnings and the eventual sale of her business were precipitated, not by her injuries, but by her reaching the age of retirement was a proper line of cross-examination where the defense purpose was to show that plaintiff had scaled down her business to keep her outside income within the limit permitted to a social security recipient who is receiving maximum retirement benefits.

9. APPEAL AND ERROR—DISCOVERY—TRIAL—ARGUMENT—IRREGULARITIES—OBJECTIONS.

> Defense irregularities in orally deposing plaintiff's doctor, after plaintiff had served notice that written interrogatories were to be propounded, and defense improprieties in argument to the jury could not be raised for the first time on appeal where plaintiff's counsel had ample opportunity to object to defense tactics and did nothing.

10. Trial—Argument—Propriety—Evidence.

Strong implications in defense counsel's closing argument that plaintiff's counsel had intentionally deleted a statement from a report by plaintiff's doctor that her ailment was a common one and not necessarily the result of her fall on defendants' premises, was a doubtful ground for reversal even if plaintiff's counsel had objected when he had the opportunity, since any prejudice that might have resulted from defendants' orally deposing plaintiff's doctor was initiated when plaintiff's counsel read the doctor's testimony into the record.

11. Trial—Procedure—Reopening of Proofs—Discretion—Appeal and Error.

Reopening of proofs is within the discretion of the trial court, and an appellate court will not interfere unless there is an abuse of discretion.

12. Trial—Instructions—Repetition—Presence of Counsel.

Repetition of a jury instruction in the absence of counsel is not error where the repeated instruction is given at the jury's request, is a complete and fair paraphrase of the original instruction, and is not prejudicial to a party's case.

13. Trial—Instructions—Repetition—Request.

Failure to repeat an instruction on burden of proof was not error where a burden of proof instruction was neither requested nor was burden of proof a part of the instruction for which repetition was requested.

Appeal from Delta, Bernard H. Davidson, J. Submitted Division 3 May 5, 1969, at Marquette. (Docket No. 5,863.) Decided February 4, 1970. Rehearing denied March 13, 1970. Leave to appeal denied May 20, 1970. 383 Mich 784.

Complaint by Esther Jackson and John Jackson against Remo Sabuco, Ida Sabuco, Marc Sabuco, and Michigan Cosmetologists Association, Inc., a Michigan corporation, for personal injury damages resulting from fall. Judgment for defendants. Plaintiffs appeal. Affirmed.

*Aaron Lowenstein,* for plaintiffs.

*Bridges & Collins,* for defendants Remo Sabuco and Ida Sabuco.

*Nicholas P. Chapekis,* for defendant Marc Sabuco.

*Howard H. Campbell,* for defendant Michigan Cosmetologists Association, Inc.

Before: J. H. GILLIS, P. J., and R. B. BURNS and V. J. BRENNAN, JJ.

V. J. BRENNAN, J. The Starlight Room of Marco's Restaurant in Escanaba is tiered, with tables on each tier. On May 19, 1963, plaintiff Esther Jackson was attending a beauticians' clinic in the Starlight Room when she tripped on a step of the tiered floor, fell, and injured herself. She and her husband subsequently brought this action for damages against the owners of the restaurant and the Michigan Cosmetologists Association, the sponsors of the clinic. The jury returned a verdict of no cause of action, and the plaintiffs appeal. Hereinafter, plaintiff, singular, refers to Esther Jackson.

Several of the many issues raised on this appeal merit no discussion. Those issues that do merit some discussion deal both with the evidence adduced and the instructions given below.

On direct examination of defendant Remo Sabuco, the following exchange took place:

"*Q.* I show you what has been now marked defendants' exhibit 4 and ask you if you will tell me what it is.

"*A.* This is a piece of metal edging of exactly the same type used on the tiers in the Starlight Room. This is not a piece of the same molding but

it is a piece identical in every way that I could tell with one exception that the brown plastic screw covering was black in the case of the Starlight Room.

"*Q.* You're talking about this piece of plastic that comes and goes?

"*A.* Right.

"*Q.* The trim thing that covers the screws?

"*A.* Yes, it was black in the case of the Starlight Room, otherwise it is identical as could be.

"*Mr. Bridges:* (*defendant's counsel*) I show this to plaintiffs' counsel and defendant's counsel. I move the introduction of defendants' proposed exhibit 4 into evidence.

"*Mr. Fitzharris:* (*plaintiffs' counsel*) I object [to] the admission on the grounds it is not a piece of the identical stripping that was used there at the time of the accident. This in fact has an entirely different formation with an insert which is entirely different from what my understanding of the large piece of stripping was. The other stripping was entirely metal. This appears to have some kind of a soft substance on the surface of it.

"*The Court:* The objection is overruled and the exhibit is admitted into evidence. I think your objection goes to the weight rather than to the admissibility, Mr. Fitzharris. The testimony of the witness is that it's identical to the stripping that was there in his place on the Starlight Room steps with the exception of the coloring of the plastic insert, is that correct?

"*The Witness:* That's exactly correct, your Honor.

"*The Court:* I'll admit it in evidence."

Plaintiffs contend that the "surprise" exhibit was introduced in violation of GCR 1963, 301.1(7) and that its introduction was prejudicial. GCR 1963, 301.1(7), we note, requires the production at the pretrial conference of "all proposed exhibits in the possession of the attorneys in support of the main

case or defense" and admission of "the authenticity of such exhibits whenever possible."

The allegation of surprise and prejudice is raised for the first time on appeal. No attempt was made at trial to call the court's attention to the fact that the pretrial summary did not contemplate the introduction of the exhibit. More importantly, there is no showing as to how this omission might result in prejudice to plaintiffs. See *Pan-American Casualty Company* v. *Reed* (CA 5, 1957), 240 F2d 336.

"The admission in evidence of exhibits which were not referred to and included in a pretrial order was a matter within the discretion of the trial court." *Millers' National Insurance Co., Chicago, Ill.* v. *Wichita Flour Mills Company* (CA 10, 1958), 257 F2d 93, 98, citing *Globe Cereal Mills* v. *Scrivener* (CA 10, 1956), 240 F2d 330.

See also *Bednarsh* v. *Winshall* (1965), 374 Mich 667. The record reveals no abuse of discretion.

Further error is alleged regarding this exhibit in that the exhibit was not part of the same edging on which plaintiff tripped. Although it is true that the exhibit was not part of the edging in question, the exhibit was clearly identified as a facsimile except for the color.

"We do not think there was any error in the use of the model which was not a facsimile in every detail. A photograph or model is used only as a 'nonverbal mode of expressing a witness' testimony' (3 Wigmore on Evidence [3d Ed.], p. 175, § 790), and as a testimonial aid it may often help the jury to understand the evidence 'more clearly than they could from the words of any witness.' The proposed aid must be sponsored by a witness who uses it to relate his personal knowledge or scientific skill and understanding. The trial court determines, within discretionary limits, the preliminary question of

whether the model is a fair representation of the ultimate fact. When the correctness of the illustrative representation is disputed, if there is room for finding in favor of the offering party, the trial court may admit it and submit the question to the jury for ultimate determination." *Finch* v. *W. R. Roach Co.* (1940), 295 Mich 589, 595, 596. (Citations omitted.)

We find no error in allowing the use of this exhibit.

Error is also alleged in that defense counsel was permitted to make a blackboard sketch of the Starlight Room while cross-examining plaintiff. In response to plaintiffs' objection, the trial court ruled, "It is understood it is only a drawing and he is not trying to make it to scale." The use of visual aids of this type is left to the trial judge's discretion. McCormick, Handbook of the Law of Evidence, p 386, citing *Finch* v. *W. R. Roach Co., supra.* Any alleged inconsistencies or inaccuracies in the sketch were raised in the presence of the jury. There was no abuse of discretion.

Plaintiffs allege additional error in the introduction of photographs of the Starlight Room which were concededly taken sometime before the accident.

The pretrial summary stated:

"Defendants Remo and Ida will have for introduction in evidence certain photographs which are as follows: Defendant R & I Sabuco exhibit no. 1, photograph of the Starlight Room, and exhibit no. 2, a photograph of the same room. These two photographs have certain penciled writings on the back which will be removed prior to trial. The plaintiffs' counsel reserves the right to object to these photographs and desires to exhibit the same to his client."

The record reveals the following:

"*Mr. Bridges:* I move the admission of defendants' exhibit 2 which was admitted at pretrial.

"*Mr. Fitzharris:* No objection."

The failure to object precludes our review.

In cross-examining the plaintiff, defense counsel asked her, over objection, whether she was receiving social security retirement benefits and, if she was, whether the benefits would be curtailed if her income exceeded a certain amount. Plaintiff answered "yes" to both questions. Plaintiffs now contend that defendants' inquiry into the receipt of social security benefits violated the rule that evidence of money or benefits received from a collateral source may not be introduced by a tortfeasor to effect a reduction of the damages he must pay. This contention is without merit. The benefits in question were specifically labeled *retirement* benefits and there was no intimation that the payments were intended to compensate plaintiff for her injuries. Moreover, on direct examination, plaintiff had testified as follows:

"*Q*. Why did you sell your business?

"*A*. Well, because I felt I couldn't keep up the schedule like it should be done, a place of that size, and the income was not sufficient when it was operating and it's so hard to get the kind of help that you need in a place of that kind when you're not able to be there to help.

"*Q*. Would you have sold your place of business if it hadn't been for your physical condition?

"*A*. No, because I enjoyed my work very much.

\*    \*    \*

"*Q*. How much profit were you deriving from your personal skill and professional knowledge prior to the accident?

"*A*. Prior to the accident?

"*Q*. Yes, say by the week.

"*A*. Well, I was averaging around $100 a week.

"*Q*. For the first six months after the accident you didn't work at all?

"*A*. No,

"*Q.* So you had no income?

"*A.* No.

"*Q.* In the six months following your return to work in November, 1963, how much profit were you deriving from your personal skill and professional knowledge?

"*A.* Not very much."

It was defense counsel's avowed purpose, in light of the above testimony, to show that the alleged decrease in plaintiff's earnings and the eventual sale of her business were precipitated, not by the accident, but by her reaching the age of retirement. In other words, the defense sought to show that plaintiff scaled down her business to keep her outside income within the limit permitted recipients while they are receiving maximum benefits. Defense counsel restricted his offer of proofs accordingly, and, in light of plaintiff's testimony, his line of inquiry was proper.

Additional error is alleged with respect to the taking of the deposition of the physician who treated plaintiff after her accident. The circumstances attending this allegation are somewhat unique. Pursuant to GCR 307.1, defendants were notified of plaintiffs' intention to take the deposition:

"You are each hereby notified that the plaintiffs in the above entitled action will take the testimony of Dr. W. Gene Schroeder who is now attached to the Grand Forks Airforce Base, Grand Forks, North Dakota, on written interrogatories, copies of which are attached hereto, * * * on Tuesday the 21st day of March, 1967 at 1:30 o'clock in the afternoon of said day, local time.

"This deposition will be taken for the purpose of use as evidence in said action.

"*You are at liberty to be present to cross-examine said witness, either orally or by interrogatories, if you so desire.*" (Emphasis added.)

The invitation to orally cross-examine the witness was allegedly inadvertent, but defense counsel nevertheless went to North Dakota and orally cross-examined Dr. Schroeder after plaintiffs' interrogatories had been answered. According to the doctor, portions of a report he had previously sent to the plaintiffs' counsel described the plaintiff's ailment as a common one and noted that it was not necessarily the result of the fall, but when the report was returned so that he might review the case, these portions had been deleted. Despite the harmfulness of this testimony and the inadvertence of the initial invitation, plaintiffs' counsel read a transcript of the deposition into evidence along with the answers to the written interrogatories. Plaintiffs now allege error in that defendants did not give notice of their intent to orally cross-examine at the time Dr. Schroeder's deposition was taken by written interrogatories. In addition they contend that the court should have prevented defendants' counsel from strongly implying in his closing argument that the deletion was intentionally made to falsify the report.

There was ample opportunity for objection to the closing argument of counsel and to any irregularities in the taking of the deposition, but none was made. Consequently, the actions underlying plaintiffs' allegations of error may not serve as a basis for reversal. *Kujawski* v. *Boyne Mountain Lodge, Inc.* (1967), 379 Mich 381. Even had objection been made, it is doubtful that we would reverse. Any prejudice that might have resulted from defendants' orally deposing the doctor was initiated by the plaintiffs themselves when their counsel read the testimony into the record. And once the doctor's testimony was on the record, counsel's closing argument was well supported by the evidence. We again find no error.

After both sides had rested and just before jury argument, plaintiffs' counsel requested leave to reopen the proofs, allegedly for rebuttal, arguing that they were without knowledge of certain measurements of the tier and the tables, measurements that had been put into evidence at the close of the defendants' case the day before. Plaintiffs' offer of proofs consisted of a demonstration that did not vary the measurements already in evidence. The trial court denied plaintiffs' request "because this is something I feel you should have discovered in time to have presented it in the original case and that you could have obtained, as far as measurements are concerned, upon discovery." There is no showing by plaintiffs of substantial prejudice which might result from a failure to reopen the proofs. A reopening of the proofs is a matter within the sound discretion of the trial court and the record reveals no abuse thereof. *Knoper* v. *Burton* (1968), 12 Mich App 644.

In instructing the jury the court outlined the issues presented for their deliberation, explaining step by step both the four different findings made possible by the evidence and the verdicts they should return once any one finding was made. After some deliberation the jury returned to the courtroom, announced that they were unable to reach a decision, and asked, "would it help if we had the charges read to us, the four situations." The court obliged them by repeating the instruction concerning the possible findings, and the jury again deliberated. Plaintiffs contend that the trial court misinterpreted the jury's request, that the request for the charge on "the four situations" referred instead to an instruction wherein the court had explained the damages allowable under each verdict. Plaintiffs further contend that the court erred by repeating the

instruction outside the presence of, and without no-
tice to, their counsel, GCR 1963, 516.4, and by failing
to reiterate that the burden of proof respecting con-
tributory negligence is on the defendants.

Plaintiffs' first two contentions are unsupported
by the record. There is nothing to indicate that
the instruction repeated was not the one requested.
To the contrary, the court specifically asked whether
it had correctly responded to the jury's request and
the jury foreman answered that it had. The record
is silent concerning the presence or absence of plain-
tiffs' counsel. The trial court, in denying plaintiffs'
motion for a new trial, said, "it is my recollection
that Mr. Fitzharris was here." In any event, repe-
tition of an instruction in the absence of counsel is
not in and of itself error:

"The court, after the jury had retired, called them
in for further instructions, which were given in the
absence of the parties. The instructions were taken
down by the reporter in the usual manner, but it is
claimed that the court erred in giving these instruc-
tions in the absence of counsel. *  *  * [The]
cases hold that it is improper for the judge to visit
the juryroom or send communications to the jury
in the absence of any consent of counsel, but none
of them holds that the court is made responsible for
the attendance of counsel in court during trial, or
when additional instructions may be given." *Na-
tional Life & Trust Co.* v. *Omans* (1904), 137 Mich
365, 367, 368, quoted with approval in *Salvatore* v.
*City of Harper Woods* (1963), 372 Mich 14, 20, 21.

The instruction given at the jury's request com-
pletely and fairly paraphrased the original; it was
not prejudicial to the plaintiffs' case. The third
contention is equally lacking in substance, since the
original instruction did not deal with burdens of
proof. It cannot be fairly said that the court erred

by failing to repeat the instruction on burden of proof when the instruction was neither requested nor part of the instruction for which repetition was requested.

Plaintiffs raise a number of final questions regarding the giving, or failure to give, certain instructions. A careful review of the record discloses no error.

Affirmed.

All concurred.