BLACHA v GAGNON

1. DAMAGES—EVIDENCE—ADMISSIBILITY—COLLATERAL SOURCE.

The collateral source rule that compensation due an injured party from an independent source other than the wrongdoer does not operate to lessen the damages recoverable from the wrongdoer does not limit the introduction of evidence of collateral sources of benefits for all purposes; evidence which has a bearing on incentive to return to work has been ruled admissible.

2. DAMAGES—EVIDENCE—ADMISSIBILITY—WAGE-CONTINUATION BENEFITS.

The admission of testimony of wage continuation benefits paid to an injured employee by an employer during a period of absence due to injuries was not prejudicial error where the jurors were instructed that no deduction was to be made in mitigation of damages for wages that may have been lost during the time that he was absent from work and the jurors heeded those instructions.

3. DAMAGES—EVIDENCE—ADMISSIBILITY—INCENTIVE TO WORK—DISCRETION.

It is within the discretion of the trial court to admit evidence bearing on whether an injured party possessed sufficient incentive to return to work where sufficient evidence had been introduced to raise doubts in the minds of the jurors as to whether the plaintiff's absence was due to the injuries received at the time of the accident in suit or was caused or prolonged by the fact that he would be paid even though he did not work.

4. DAMAGES—EVIDENCE—ADMISSIBILITY—WAGE CONTINUATION BENEFITS—PUBLIC POLICY.

Admitting evidence of wage continuation benefits regarding lost earning capacity is not against public policy.

5. DAMAGES—EVIDENCE—ADMISSIBILITY—INCENTIVE TO WORK—WAGE CONTINUATION BENEFITS.

Recovery from a third party who is responsible for injuries

REFERENCE FOR POINTS IN HEADNOTES
[1-5] 22 Am Jur 2d, Damages §§ 304-331.

suffered is not diminished by receipt of wages or salary from an employer for the period of disability, but there are circumstances where evidence may be introduced to show a motive for failure to resume regular employment within a reasonable period of time: sufficient facts must be adduced to raise serious doubts in the minds of the jurors as to the extent of the injury actually suffered, and with such a foundation established, the proposed evidence must refute the fact that the plaintiff actually lost the wages or salary claimed; then should the trial judge in the exercise of his discretion determine that the evidence affects the weight of testimony introduced to show that plaintiff was disabled from working due to the injury, evidence of wage continuation benefits will be deemed admissible, but the trial judge must instruct the jury as to each of the theories of recovery advanced by the opposing parties clearly advising that if plaintiff's contention is believed wages or salary from an employer may not serve to mitigate damages.

Appeal from Macomb, Edward J. Gallagher, J. Submitted Division 2 December 12, 1972, at Lansing. (Docket No. 12929.) Decided May 22, 1973.

Complaint by Edward Blacha and Dorothy E. Blacha against James D. Gagnon and Charles Gagnon for damages for injuries resulting from an automobile accident. Directed verdict for plaintiffs as to liability, and jury verdict and judgment of no cause of action as to damages. Plaintiffs appeal. Affirmed.

*Mundstock & Richardson,* for plaintiffs.

*Mather, Glime & Daoust,* for defendants.

Before: FITZGERALD, P. J., and McGREGOR and TARGONSKI,* JJ.

FITZGERALD, P. J. Plaintiffs appeal as of right

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

from a jury verdict of no cause of action on the issue of damages.

On January 4, 1968, plaintiff Edward Blacha was traveling west on Frazho Road in Macomb County. While stopped behind a car preparing to turn left onto Patton Road, plaintiff's vehicle was struck in the rear by an automobile driven by defendant Charles Gagnon. The impact caused plaintiff's vehicle to collide with the car in front of him. Following police investigation, plaintiff drove the driver of the car in front of him to her home, then proceeded to his place of employment, Fisher Body.

At the time of the accident, plaintiff felt no pain, though he admitted to being "shook up". He arrived at the plant about 9 o'clock a.m. and worked the full day. Plaintiff testified he felt stiff across the back of the neck the following morning, but he reported for work at his usual starting time of 7:30. Allegedly, plaintiff was unable to sit or bend, and received permission to leave work at 10 o'clock a.m. Plaintiff testified that he was unable to get out of bed the following morning (Saturday) and was treated later that day by Dr. Ribbentrop. Plaintiff resumed his duties at Fisher Body the following week, working an additional two hours overtime four of the five days. He did not work from January 15, 1968 until April 18, 1968. During this time, plaintiff alleged, his once-active life that included softball, bowling, and other athletic activities had been sharply curtailed as a result of the accident. This testimony was contraverted by defendant's claim that plaintiff continued to bowl regularly and participated in two softball games six months following the accident. Plaintiff was treated by Dr. Ribbentrop on a weekly and biweekly basis until April 13, 1970.

Testimony was introduced that plaintiff received wage continuation benefits from Fisher Body amounting to $36.90 less than the income he normally would have received if he had been regularly employed. Defense counsel introduced evidence that plaintiff remained an active participant in softball and bowling from the 1968 season to the present time. A physical examination conducted February 22, 1969 by Dr. Max Newman revealed no evidence of any objective symptoms of neck or back injury. Plaintiff and his wife sought damages for medical expenses, pain and suffering, loss of wages, loss of earning capacity, and loss of consortium. A directed verdict as to the liability of defendant was granted to plaintiffs. The jury, in determining the question of damages, returned a verdict of no cause of action. Plaintiff's motion for new trial and, in the alternative, for judgment notwithstanding the verdict was denied.

The several issues raised relate to the admission of evidence that plaintiff received wage continuation benefits as reimbursement for a substantial part of "loss of wages" during his leave of absence. Plaintiffs contend the collateral source rule prohibits the use of such evidence for any purpose whatsoever. Defendants argue the collateral source rule is one of substantive law rather than an exclusionary rule of evidence. Their position limits the collateral source rule to instances where such evidence is offered to mitigate damages. This does not preclude the admission of relevant evidence to show plaintiff's motive for failure to return to work.

The collateral source rule provides that compensation due an injured party from an independent source other than the wrongdoer does not operate to lessen damages recoverable from the wrongdoer.

Recovery based upon an insurance contract for the value of goods damaged by fire does not preclude a right of action against the party responsible for the fire. *Perrott v Shearer,* 17 Mich 48 (1868). The issue before the Court involved mitigation of damages only. Evidence that owners of buildings or goods destroyed by fire were reimbursed by their insurance company was ruled inadmissible in an action against the responsible defendants. *Hagan v The Chicago D & C G T J R Co,* 86 Mich 615 (1891); *Peter v Chicago & W M R Co,* 121 Mich 324 (1899). Neither subsequent case expanded upon the issue decided in *Perrott.*

Recovery of wages or salary by an injured person from his employer may not be introduced to mitigate damages. *Motts v Michigan Cab Co,* 274 Mich 437, 443–444 (1936). The Court limited its ruling to mitigation of damages.

"The prevailing doctrine in this country, however, is that when the salary or wages of an injured person is paid by his employer during the time he is unable to perform services by reason of his injuries, that such payment is no ground for mitigation or diminution of the damages to be paid by one who caused the injury. *Cunnien v Superior Iron Works Co,* 175 Wis 172 (184 NW 767, 18 ALR 667). See, also, the annotation thereto in 18 ALR 678, *et seq,* where the authorities are collected and digested".

Motts analogized recovery of wages and salary to damages reimbursed through insurance, and adopted the rationale espoused earlier in *Perrott* that defendant has no equitable or legal claim to share in the amount paid to plaintiff as a result of damages suffered. The language specifically limits the application of this rationale to questions of mitigation of damages. The litany of cases cited by plaintiff are limited in the same respect.

Plaintiff's most persuasive basis for reversal could have been advanced by proving that evidence admitted by the defendant regarding a wage continuation plan was in violation of the collateral source rule. Though ten cases are cited for this proposition, none even addresses the issue as stated in plaintiff's brief. The most recent Michigan case of *Canning v Hannaford,* 373 Mich 41 (1964), lends no support to plaintiff's contention that reference to collateral sources of benefits for all purposes must be excluded.

Reference to collateral sources of compensation is admissible in several jurisdictions under certain conditions. Evidence which has a bearing on one's incentive to return to work has been ruled admissible. In *McElwain v Capotosto,* 332 Mass 1, 2; 122 NE2d 901, 902 (1954), an objection was raised to testimony revealed during cross examination which established that plaintiff would be paid for the time he was absent from work. The Supreme Court agreed that this testimony could not be admitted in mitigation of damages, but affirmed the exercise of discretion by the trial judge in admitting the testimony on different grounds.

"We think the judge meant that the line of questioning had some bearing on the issue whether the plaintiff's absence from work was really due to an injury received at the time of the accident or was caused or prolonged by the fact that he would be paid if he did not work, even though the sum paid him would not reduce the recoverable damages for any period of disability actually due to the accident."

Plaintiff contends the effect of *McElwain* has been emasculated by *West v Molders Foundry Co, Inc,* 342 Mass 8; 171 NE2d 860 (1961). This contention is misplaced. The portion of *West* quoted in plaintiff's reply brief represents two isolated para-

graphs which appear out of context. While the court did overrule defendant's objection to the exclusion of evidence of workmen's compensation received by plaintiff, no reference was made as to whether plaintiff's absence from work was prolonged by the fact that payments to him were continued during this period. The court further distinguished *West* from *McElwain* in stating the former to be a matter of pleading while the latter represents a question of evidence on the issue of damages.

Evidence of payments made to an injured employee by an employer during a period of absence due to injuries is not prejudicial error where jurors heeded instructions that no deduction was to be made for wages that may have been lost to an employee during this period. *Boone v Brown,* 12 Md App 619; 280 A2d 51 (1971). The instructions given the jury in the instant case were specifically cautionary on this point. The judge instructed:

"First, you must decide which of these contentions you adopt before you can assess damages. If you elect to select the theory adopted by the plaintiff, then the money paid to him during the time he was off is not to be taken into account in your estimation of damages. And I want you to understand this clearly, you may not say he sustained X number of damages and he got so much while he was off, so we subtract it."

The jury verdict of no cause of action indicates the jury chose not to believe that plaintiff suffered any of the damages being sought.

It is within the discretion of the trial court to admit evidence bearing on the question of whether an injured party possessed sufficient incentive to return to work. *Thornton v Ferris,* 108 RI 491; 276 A2d 758 (1971); *Wentworth v Butler,* 134 Minn 382; 159 NW 828 (1916); *Bookbinder v Rotondo,*

109 RI 346; 285 A2d 387 (1972). In *Thornton,* the absence of any evidence that plaintiff was a malingerer prompted the trial judge to exclude evidence of payments made to plaintiff during the period of disability. See, also, *R E Dumas Milner Chevrolet Co v Morphis,* 337 SW2d 185 (Tex Civ App, 1960). However, in *Bookbinder,* evidence which affected the weight of plaintiff's testimony that the injury caused his absence from work was admissible. The trial judge in the instant case concluded that sufficient evidence had been introduced to raise doubts in the minds of the jurors as to whether plaintiff's absence was really due to injuries received at the time of the accident or was caused or prolonged by the fact that he would be paid even though he did not work.

Testimony alleging absence from work was not due solely to injuries received, but was extended because plaintiff had accumulated sick leave is admissible. *Ridilla v Kerns,* 155 A2d 517 (DC, 1959). We recognize a distinction exists between collateral sources of income and the use of accumulated sick leave, but this circumstance is similar to the instant case in that the point sought to be proved is that plaintiff's absence from work was unnecessarily extended. In each instance, plaintiff received income while away from work, and this bears directly on the issue of one's incentive to resume employment.

Defendants, in their reply brief, contend that *Jackson v Sabuco,* 21 Mich App 430 (1970), rules that evidence of receipt of benefits from a collateral source may be introduced to show the existence of a motive for remaining away from work. The facts of the cases differ, but the principal involved applies equally. In *Jackson,* plaintiff suffered an injury caused by defendant's negligence

and subsequently sold her business allegedly because she was unable to effectively manage the concern. During cross examination, plaintiff's testimony that retirement income from social security was admitted to show a motive for selling her business in order to reduce her outside income within a limit permitting receipt of maximum benefits allowable. There is sufficient similarity between *Jackson* and the instant case to render admissible testimony introduced to question one's motive for failure to resume his regular employment.

Defense counsel established an adequate foundation in support of his contention that plaintiff's injury was not as incapacitating as alleged by plaintiff. Plaintiff participated in bowling and softball activities following the accident. The week following the alleged injury, plaintiff worked every day, including overtime. The testimony of Dr. Newman revealed no evidence of objective symptoms of the injury claimed. Considered together with the cautionary instructions of the trial judge, there was no abuse of discretion in admitting evidence of plaintiff's wage continuation benefits to show plaintiff's reluctance to return to his regular employment.

Plaintiff next objects to the instructions given the jury regarding the collateral source rule. However, they present no authority or argument in support of this objection. The jury instructions, quoted previously, were correct. The jury was adequately apprised of the collateral source rule and the theories advanced by each party. The instructions given by the court in *Canning v Hannaford, supra,* are quite similar to those present in the instant case. There, the Supreme Court determined that the jury was correctly instructed not to

consider earnings received as mitigating in regard to damages for lost earnings.

Plaintiff contends the jury verdict as to damages was against the great weight of the evidence. We disagree. Defense counsel introduced sufficient credible evidence from which the jury could return a legitimate verdict of no cause. We further note that plaintiff did not brief this particular issue. Questions for appeal which are not briefed are considered abandoned by this Court. *Mitcham v Detroit,* 355 Mich 182 (1959).

Finally, plaintiffs argue that admitting evidence of wage continuation benefits regarding lost earning capacity is against public policy. We find this argument unpersuasive. The public policy considerations in opposition to plaintiffs' contention militate against such a result.

This Court does not propose to contravene the collateral source rule in Michigan. Recovery from a third party who is responsible for injuries suffered is not diminished by receipt of wages or salary from the employer for the period of his disability. Evidence introduced in mitigation of damages continues to be inadmissible. However, there are circumstances where evidence may be introduced to show a motive for failure to resume regular employment within a reasonable period of time. Sufficient facts must be adduced which raise serious doubts in the minds of the jurors as to the extent of the injury actually suffered. This foundation established, the proposed evidence must refute the fact that plaintiff actually lost the wages or salary claimed. Taken together, should the trial judge in the exercise of his discretion determine that the evidence affects the weight of testimony introduced to show that plaintiff was disabled from working due to the injury, it will be deemed

admissible. Further, the trial judge must instruct the jury as to each of the theories of recovery advanced by the opposing parties, clearly advising that if plaintiff's contention is believed, wages or salary from an employer may not serve to mitigate damages.

Each of these prerequisites was met in the instant case.

There was no abuse of discretion on the part of the trial judge.

Affirmed. Costs to appellees.

McGREGOR, J., concurred.

TARGONSKI, J., not participating.