## RICHARDS v PIERCE

Docket No. 86283. Submitted April 8, 1987, at Grand Rapids. Decided
    August 17, 1987.

David M. Richards was working on his car when he asked his
    friend, Scott Pierce, to start the engine. Due to Pierce's inexpe-
    rience with manual transmission vehicles, the car lurched
    forward and knocked Richards over a concrete retaining wall.
    Richards was shaken up, but declined Pierce's suggestion that
    Richards go to the hospital. Two days later, Richards did go to
    the hospital, where he was x-rayed, and given a cervical collar
    and a prescription. A few days later, Richards was examined by
    a neurosurgeon, Dr. Lynn S. Hedeman, who ordered a myelo-
    gram for Richards' upper and lower back. The myelogram was
    performed, but the dye was left in Richards' spinal area be-
    cause of the presence of blood and because Richards suffered a
    spasm and severe pain during the dye removal process. Rich-
    ards was then unable to walk and had to use a wheelchair for
    the next six months. Richards, on Dr. Hedeman's recommenda-
    tion, was examined by another neurologist, Dr. Walter M.
    Braunohler, who diagnosed Richards as having arachnoiditis,
    an inflammation of the spinal canal lining, and a deterioration
    of a lower back disc. Dr. Braunohler prescribed an anti-inflam-
    matory medicine and recommended that Richards avoid any
    bending, lifting, twisting, or reaching. Dr. Braunohler subse-

REFERENCES

Am Jur 2d, Automobile Insurance §§ 340-368.

Am Jur 2d, Damages §§ 296 et seq.

Am Jur 2d, Insurance §§ 547, 555 et seq.; 2020-2022.

Am Jur 2d, Negligence §§ 127 et seq.

What constitutes sufficiently serious personal injury, disability,
    impairment, or the like to justify recovery of damages outside of
    no-fault automobile insurance coverage. 33 ALR4th 767.

What constitutes "serious illness," or "serious disease," or equiva-
    lent language used in insurance application. 28 ALR3d 1255.

Injury or disability resulting from medical treatment for accident
    as proximately caused by original accident within coverage of
    accident or disability insurance. 25 ALR3d 1386.

See also the annotations in the Index to Annotations under Proxi-
    mate Cause.

quently declared Richards permanently disabled from any occupation that required bending, stooping, or heavy lifting. Richards filed suit against Pierce in Kent Circuit Court claiming to have suffered a serious impairment of body function as a result of the accident and claiming that he has been rendered disabled and entitled to no-fault benefits. He seeks excess wage loss and noneconomic damages from Pierce. Following a jury trial, the court, George V. Boucher, J., entered a judgment of no cause of action based on the jury's finding that Pierce's negligence was not a proximate cause of Richards' injury. Richards appealed.

The Court of Appeals *held:*

1. The trial court did not err in allowing the jury to determine whether Richards suffered a serious impairment of body function.

2. The issue of proximate cause was properly submitted to the jury.

3. The trial court did not err in denying Richards' motion in limine to exclude evidence of benefits received from collateral sources. The evidence was more probative than prejudicial.

Affirmed.

1. INSURANCE — NO-FAULT — NONECONOMIC LOSS — SERIOUS IMPAIRMENT OF BODY FUNCTION.

The question whether a plaintiff suffered a serious impairment of body function must be submitted to the jury whenever the evidence would cause reasonable minds to differ as to the answer, even where there is no material factual dispute as to the nature and extent of the plaintiff's injuries (MCL 500.3135; MSA 24.13135).

2. INSURANCE — NO-FAULT — SERIOUS IMPAIRMENT OF BODY FUNCTION.

An impairment of body function, to qualify as a serious impairment of a body function under the no-fault act, need not be an impairment of an important body function or of the entire body, nor need the impairment be permanent; the paramount consideration is the effect of the injury on the plaintiff's body functions, and not the effect of the injury on the plaintiff's life; factors to consider in determining whether an impairment qualifies as a serious impairment of a body function under the no-fault act include the extent of the impairment, the particular body function impaired, the length of time the impairment lasted, the treatment required to correct the impairment, and any other relevant factors (MCL 500.3135; MSA 24.13135).

3. INSURANCE — NO-FAULT — SERIOUS IMPAIRMENT OF BODY FUNCTION.

A plaintiff claiming a serious impairment of a body function under the no-fault act must introduce evidence, usually by medical testimony, which establishes a physical basis for subjective complaints of pain and suffering (MCL 500.3135; MSA 24.13135).

4. NEGLIGENCE — CAUSATION IN FACT — PROXIMATE CAUSE.

Causation in fact is one aspect of, and distinguishable from, legal or proximate cause.

5. NEGLIGENCE — INTERVENING CAUSES.

Consequences of a doctor's negligent acts in treating a plaintiff's original injury are considered foreseeable and therefore generally do not sever whatever connection there may be between the plaintiff's injuries and a defendant's negligence in causing those injuries; whether the doctor's intervening negligent act constitutes a superseding proximate cause is for the jury to decide.

6. EVIDENCE — DAMAGES — COLLATERAL BENEFITS.

Evidence concerning collateral benefits due an injured party from an independent source other than a wrongdoer is admissible where it has a bearing on the injured person's incentive to work.

*Harry L. Lieffers, Jr.,* for plaintiff.

*Smith, Haughey, Rice & Roegge* (by *Susan J. Bradley*), for defendant.

Before: WEAVER, P.J., and D. E. HOLBROOK, JR., and T. GILLESPIE,* JJ.

WEAVER, P.J. Plaintiff appeals as of right from a Kent Circuit Court judgment of no cause of action in favor of defendant. We affirm.

### FACTS

On May 20, 1982, plaintiff and his friend, the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

defendant herein, were preparing to leave a restaurant when plaintiff discovered that his car would not start. While plaintiff was trying to fix the car, he asked defendant to start the engine, but due to defendant's inexperience with manual transmission vehicles, the car lurched forward and knocked plaintiff over a concrete retaining wall. Although shaken, plaintiff declined defendant's suggestion to go to the hospital, whereupon the parties talked jovially and plaintiff drove defendant home.

However, due to pain in his shoulder and neck, two days after the accident plaintiff went to the hospital, where he was x-rayed and given a cervical collar and a prescription. A few days later plaintiff was also examined by neurosurgeon Dr. Lynn S. Hedeman, who ordered a myelogram for plaintiff's upper and lower back. After performance of the myelogram on June 14, 1982, because blood had been seen and because plaintiff suffered a spasm and severe pain during the process of dye removal, the radiologist was forced to leave the dye in plaintiff's spinal area.

Whereas plaintiff had experienced minor discomfort but had still been able to walk into the hospital before the myelogram was performed, he left the hospital in a wheelchair, unable to walk, and remained in this condition for approximately six months. At trial, Dr. Hedeman testified that in some people the dye could cause arachnoiditis, an inflammation of the spinal canal lining which might result in severe pain, disability, and objective damage.

Although plaintiff did not return to Dr. Hedeman after the myelogram, on Dr. Hedeman's recommendation plaintiff was examined by Dr. Walter M. Braunohler on June 22, 1982. Dr. Braunohler's examination revealed both arachnoiditis and

deterioration of a lower back disc. Dr. Braunohler prescribed an anti-inflammatory medicine and recommended that plaintiff avoid any bending, lifting, twisting, or reaching.

The diagnosis of arachnoiditis was confirmed by another neurologist. Although plaintiff's condition improved during the time of his further visits to Dr. Braunohler between January of 1983 and March of 1984, plaintiff's continued experiencing of residual symptoms caused Dr. Braunohler to write a letter on March 5, 1986, declaring plaintiff permanently disabled from any occupation that required bending, stooping, or heavy lifting.

Prior to the accident on May 20, 1982, plaintiff had been involved in three other accidents in which he sustained injuries with residual effects.[1] Subsequent to his release from military service in 1969 and prior to the accident of May 20, 1982, plaintiff had been working at various jobs requiring strenuous physical exertion.

Plaintiff testified at trial that, as a result of the 1982 myelogram, he was unable to walk without the aid of crutches or a cane for approximately six months and that when his condition stabilized he

[1] During the first incident, in early 1968, when plaintiff was serving in the Marine Corps in Viet Nam, plaintiff sustained shrapnel and fragment wounds in the neck, forehead, arms and side. Plaintiff suffered from postconcussion syndrome and experienced side effects through 1972. The second incident in late 1968, while plaintiff was still in the Marines, resulted in plaintiff's loss of three fingers and his honorable medical discharge and disability rating of sixty percent—thirty percent related to the loss of fingers and thirty percent to the postconcussion syndrome. Between June, 1982, and March, 1985, plaintiff received monthly Veterans Administration benefits in connection with these injuries.

Plaintiff's third injury occurred in September of 1980 when he fell from a ladder at work. One of two evaluating physicians indicated temporary total disability; the other indicated a ten percent permanent impairment of the right shoulder, and advised plaintiff to refrain from repetitive twisting, lifting, bending, or use of his right arm and shoulder. Plaintiff received settlement payments in workers' compensation and related no-fault litigation, as well as disability insurance benefit payments.

was unable to climb ladders, carry heavy equipment, or do repetitive bending or stooping. At the time of trial, plaintiff had begun doing full-time light assembly work and also did bookkeeping and inventory.

The jury returned a judgment of no cause of action in favor of defendant. Plaintiff appeals as of right.

### SERIOUS IMPAIRMENT OF BODY FUNCTION

On appeal, plaintiff argues that, because it was not disputed that the myelogram caused plaintiff's arachnoiditis, the trial court should have determined pursuant to MCL 500.3135; MSA 24.13135,[2] as a matter of law, the existence of serious impairment of body function and that the court erred by allowing the jury to decide this issue instead. We disagree.

The guidelines for resolving this issue were recently set forth in *DiFranco v Pickard*, 427 Mich 32; 398 NW2d 896 (1986). *DiFranco* held that, even where evidentiary facts are undisputed, if reasonable minds might differ as to whether the plaintiff suffered a serious impairment of body function, the issue must be submitted to the jury. *Id.* at 58.[3]

---

[2] MCL 500.3135; MSA 24.13135 provides in pertinent part:

(1) A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement.

[3] In this respect *DiFranco* overturned prior law which held that where there existed a factual dispute as to the nature and extent of a plaintiff's injuries, but where the dispute was not material to determining whether the plaintiff suffered serious impairment of a body function, the trial court was to decide as a matter of law whether the threshold requirement of serious impairment of body function had been met. *Cassidy v McGovern*, 415 Mich 483, 502; 330 NW2d 22 (1982), reh den 417 Mich 1104 (1983).

In this case, unrefuted testimony of two physicians clearly established that plaintiff's contraction of arachnoiditis resulted from the dye which remained in his spinal area subsequent to the myelogram. Since reasonable minds could only conclude that plaintiff's contraction of arachnoiditis resulted from the myelogram, there was no material factual dispute on this point. There was, however, disagreement concerning the nature and extent of plaintiff's other complained-of injuries. There was also disagreement as to whether plaintiff's disabilities, excluding his contraction of anachnoiditis, flowed from the 1982 accident or from prior injuries and their residual effects.

Because reasonable minds could differ as to the nature and extent of plaintiff's injuries other than arachnoiditis, there existed a material factual dispute on this point. Therefore we pose the following questions to find out if reasonable minds could also differ about whether the impairment which is the subject of this litigation resulted from injuries other than arachnoiditis. If so, the trial court was correct in submitting to the jury the issue of serious impairment of body function.

First, which body function was impaired due to injuries sustained in the accident of May 20, 1982? *Id.* at 67. This question is answered by plaintiff's testimony that his ability to walk and move his back was impaired by the myelogram-induced arachnoiditis.

Second, was the impairment serious? *Id.* To qualify as serious, the impairment need not be of an important body function or of the entire body. *Id.* at 39-40. Nor need the impairment be permanent. *Id.* at 68. The paramount consideration is the effect of the injury on plaintiff's body functions, not the effect of the injury on plaintiff's life. *Id.* at 68-69. Factors to consider include "the extent of

the impairment, the particular body function impaired, the length of time the impairment lasted, the treatment required to correct the impairment, and any other relevant factors." *Id.* at 39-40. A plaintiff must introduce evidence, usually by medical testimony, which establishes a physical basis for subjective complaints of pain and suffering. *Id.* at 74-75.

Here, reasonable minds would agree that plaintiff's impairment lasted at least six months and did not require extensive treatment or hospitalization, since plaintiff needed no corrective surgery. *Id.* at 68. Reasonable minds would also agree that plaintiff's medical testimony established that the myelogram-induced arachnoiditis precluded him from occupations that required bending, stooping, or heavy lifting, thereby preventing his return to strenuous physical work.

However, the "relevant factor" of plaintiff's previous injuries might cause reasonable minds to *disagree* on the seriousness of the 1982 impairment. Testimony established that reasonable minds could differ as to whether and to what extent plaintiff's back problems were caused by the 1982 accident and to what extent they were caused by plaintiff's previous injuries. Because the trial court was required to view the evidence in a light most favorable to the nonmoving party and, if reasonable minds could differ, to let the jury decide whether there existed a serious impairment of body function, *id.* at 69, the trial court did not err in submitting the impairment issue to the jury.[4]

---

[4] Before reaching the question of serious impairment of body function, the jury was given a special verdict form and told to answer questions concerning negligence as well as plaintiff's economic and noneconomic loss claims. The jury was instructed not to address the issue of serious impairment of body function if certain questions were answered in the negative.

PROXIMATE CAUSE

Raising the issue for the first time on appeal, plaintiff contends that foreseeability of the development of arachnoiditis was a legal and not a factual issue and hence the question of proximate cause was improperly submitted to the jury.

This Court will generally decline to consider issues raised for the first time on appeal. *Trail Clinic, PC v Bloch,* 114 Mich App 700, 711; 319 NW2d 638 (1982), lv den 417 Mich 959 (1983). However, review may be granted if failure to consider an issue would result in manifest injustice, if considering the issue is necessary to a proper determination of the case, or if the question is one of law concerning which the necessary facts have been presented. *Deeb v Berri,* 118 Mich App 556, 562; 325 NW2d 493 (1982); *Loper v Cascade Twp,* 135 Mich App 106, 111; 352 NW2d 357 (1984). We accept review of this question because the issue of proximate cause is necessary to a proper determination of the case.

Causation in fact is one aspect of, and distinguishable from, legal or proximate cause. *Moning v Alfono,* 400 Mich 425, 438-439; 254 NW2d 759 (1977), reh den 401 Mich 951 (1977), supplemental order 402 Mich 958 (1978). The question of fact as to whether the defendant's conduct was a cause of the plaintiff's injury must be separated from the question as to whether the defendant should be legally responsible for the plaintiff's injury. Pros-

---

Because the jury rendered a verdict of no cause of action based on its findings that (1) plaintiff sustained no economic work loss damage beyond three years and (2) defendant's negligence was not a proximate cause of plaintiff's injury, the jury never reached the question of whether plaintiff's injury resulted in a serious impairment of body function. However, a finding of no serious impairment of body function would not have been against the great weight of the evidence. Therefore this Court must affirm the jury's findings of fact as reflected in the verdict. *DiFranco, supra* at 59.

ser & Keeton, Torts (5th ed), § 42, pp 272-273, 279. Legal cause is often stated in terms of foreseeability. See *McMillan v State Highway Comm,* 426 Mich 46, 61-62; 393 NW2d 332 (1986).[5]

If facts bearing upon aspects of proximate cause other than causation in fact are not in dispute and if reasonable minds could not differ about applying the legal concept of "proximate cause" to those facts, then the issue is one of law for the court. But if reasonable minds could differ, the issue of "proximate cause" is for the jury to decide based on the court's instructions as to the law. *Id.* at 63, n 8. Hence, where reasonable minds might differ regarding application of the reasonableness of the risk of harm, the question is best left to the jury. 426 Mich 63.

Whether the plaintiff's injury and damage was proximately caused by the defendant's negligent acts is generally a question for the jury. *Michigan Sugar Co v Employers Mutual Liability Ins Co of Wisconsin,* 107 Mich App 9, 14; 308 NW2d 684 (1981), lv den 417 Mich 1046 (1983). An intervening cause is not an absolute bar to liability if it is foreseeable. *Taylor v Wyeth Laboratories, Inc,* 139 Mich App 389, 402; 362 NW2d 293 (1984), lv den 423 Mich 852 (1985). Consequences of a doctor's negligent acts in treating the plaintiff's original injury are considered foreseeable. *Gulick v Kentucky Fried Chicken Mfg Corp,* 73 Mich App 746, 750; 252 NW2d 540 (1977). Hence, whether the doctor's intervening negligent act constitutes a superseding proximate cause is a question for the jury. *Young v E W Bliss Co,* 130 Mich App 363,

---

[5] Foreseeability—whether it is foreseeable that the actor's conduct may create a risk of harm to the victim, and whether the result of that conduct and intervening causes were foreseeable—concerns whether the defendant's acts are so significant and important a cause of the plaintiff's injury that the defendant should be held legally responsible. 426 Mich 61-62.

369; 343 NW2d 553 (1983). And where there could exist a reasonable difference of opinion as to foreseeability of a particular risk, as to reasonableness of a defendant's conduct with respect to that risk, or as to the character of the intervening cause, the issue is for the jury. *Scott v Allen Bradley Co*, 139 Mich App 665, 672; 362 NW2d 734 (1984).

In this case, plaintiff complained of injury resulting from the myelogram which was prescribed after the 1982 accident caused by defendant. There could be a reasonable difference of opinion as to foreseeability of the risk of plaintiff's injuries, the reasonableness of defendant's conduct with respect to it, and the character of the intervening cause. Thus the issue of "proximate cause" was for the trier of fact and was properly submitted to the jury.

### MOTION IN LIMINE

Finally, plaintiff argues that it was error for the trial court to deny his motion in limine to exclude evidence of benefits received from collateral sources.[6] We disagree.

It is true that, under the "collateral source" rule, where an injured person is compensated from a source independent of the wrongdoer, such compensation will not lessen damages recoverable from the wrongdoer. *Blacha v Gagnon*, 47 Mich App 168, 171; 209 NW2d 292 (1973). However, evidence bearing on an injured person's incentive

---

[6] Before trial, plaintiff moved in limine to exclude evidence of plaintiff's Veteran's Administration disability benefits, workers' compensation award, disability insurance and no-fault insurance under the "collateral source" rule and as unfairly prejudicial pursuant to MRE 403. Defendant countered that the information was admissible because relevant to dispute plaintiff's claim that he could not rehabilitate himself and that it was also relevant to show plaintiff's lack of motivation and incentive to work, since plaintiff already had a source of income.

to work is admissible in the trial court's discretion. *Id.* at 173-174. Accord, *Gallaway v Chrysler Corp,* 105 Mich App 1, 7; 306 NW2d 368 (1981), lv den 413 Mich 853 (1982).

We find no abuse of discretion here. Subsequent to the litigated accident, plaintiff performed work, did household chores, and attended school, but he did not avail himself of opportunities for rehabilitation and was involved in other litigation to obtain additional benefits. In denying plaintiff's motion in limine, the judge commented that incentive to work was a legitimate question and that where the extent of prior work activities and injuries were at issue the defendant was allowed to try to prove plaintiff's untruthfulness. Twice during trial and again in his charge to the jury, the judge carefully gave limiting instructions for the jury to consider evidence of plaintiff's collateral benefits only as to their bearing on motivation or incentive to resume regular employment. Hence we do not believe that admission of this evidence was an abuse of the trial court's discretion, since the evidence was more probative than prejudicial.

Affirmed.