TYLER v FIELD

Docket No. 114538. Submitted April 4, 1990, at Lansing. Decided September 11, 1990. Leave to appeal applied for.

Janice Tyler fell while cross-country skiing on January 2, 1986. On January 27, 1986, she consulted Dr. William Loop complaining of numbness and tingling in her left arm. When her symptoms became progressively worse, Dr. Loop referred Tyler to Dr. E. Malcolm Field, a neurosurgeon, who performed a series of tests on Tyler to rule out multiple sclerosis and meningitis. When Tyler's condition worsened, a computerized axial tomography (CAT) scan was performed, which disclosed that Tyler had suffered strokes caused by an occluded carotid artery. The strokes resulted in Tyler having residual paralysis in the left arm, weakness in the left leg requiring her to walk with a cane, and spasticity of the left hip. Janice and Ronald Tyler filed suit against E. Malcolm Field, M.D., and others in Saginaw Circuit Court alleging inter alia that Dr. Field was negligent in failing to perform magnetic resonance imaging or a CAT scan on Janice Tyler following Dr. Loop's referral. Dr. Field moved for summary disposition prior to expiration of the time allowed for discovery, stating that his conduct had met the requisite standard of professional care, that he had performed a complete neurological examination, and that he had advised Janice Tyler to submit to magnetic resonance imaging and a spinal tap and she refused. Plaintiffs argued that Dr. Field's motion for summary disposition was premature. The court, Robert L. Kaczmarek, J., issued an order that discovery was to be completed no later than June 21, 1989, and that plaintiffs were to name their expert witnesses no later than October 12, 1988, twenty-one days after entry of the order. Plaintiffs failed to comply with the order that they name their expert witnesses and, on October 28, 1988, the court granted Dr. Field's motion for summary disposition, finding there was no genuine issue of fact presented as to whether Dr. Field's treatment of Janice

REFERENCES

Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 200 et seq.; Summary Judgment § 27.

See the Index to Annotations under Malpractice by Medical or Health Professions; Summary Judgment.

Tyler met the requisite standard of professional care. Plaintiffs' motion for reconsideration was denied. Plaintiffs appealed.

The Court of Appeals *held:*

The trial court erred in granting defendant's motion for summary disposition. Factual questions exist as to what Dr. Field did or did not do as regards the treatment rendered to Janice Tyler. Such questions are best resolved by a jury. Furthermore, defendant's motion for summary disposition was filed only a week or so after plaintiffs' depositions taken by defendant had been received by plaintiffs' counsel, and several medical witnesses whose testimony would be relevant for purposes of an expert's formulating an opinion on the adequacy of the standard of care provided had yet to be deposed. To expect an expert witness to formulate a sound medical opinion within a twenty-one-day period when all relevant facts were not yet available for purposes of forming that opinion is unreasonable. That portion of the court's order was premature.

Reversed and remanded.

NEGLIGENCE — MEDICAL MALPRACTICE — EVIDENCE — QUESTIONS OF FACT — SUMMARY DISPOSITION.

Summary disposition on the ground that there is no genuine issue as to any material fact is inappropriate in a medical malpractice action where factual questions exist as to what a doctor did or did not do in rendering treatment to a patient; such factual questions are best resolved by a jury.

*Charfoos & Christenson, P.C.* (by *David R. Parker* and *Sharon S. Lutz*), for plaintiffs.

*McGraw, Borchard & Martin, P.C.* (by *John W. McGraw*), for defendants.

Before: WAHLS, P.J., and MARILYN KELLY and G. S. ALLEN,* JJ.

G. S. ALLEN, J. In this medical malpractice action we are asked to determine the propriety of the entry of a November 14, 1988, order, granting defendants Field's motion for summary disposition under MCR 2.116(C)(10) and dismissing plaintiffs'

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

complaint as pertains to defendants Field. We are also asked to determine the propriety of the entry of a December 15, 1988, order denying plaintiffs' motion for reconsideration.

On January 27, 1986, plaintiff Janice Tyler consulted defendant Dr. William Loop regarding complaints of numbness and tingling in her left arm. She stated that she had fallen while cross-country skiing on January 2, 1986.[1] Dr. Loop diagnosed her symptoms as "a whiplash-like injury, which . . . resulted in trapezius muscle spasm" and recommended physical therapy and a muscle relaxant. However, her symptoms became progressively worse. On February 16, 1986, Janice had her husband take her to the emergency room of St. Joseph Hospital at Tawas City, where she was seen by Dr. Loop. At this point, Dr. Loop referred Janice to defendant Dr. Field, a neurosurgeon with offices in Saginaw.

Dr. Field examined Janice in his office on February 17, 1986, and performed a series of tests to rule out multiple sclerosis and meningitis. Janice's father had died of multiple sclerosis, and she had expressed her concern about that to Dr. Field. The test results were normal, with the exception of the cortical response, which was attenuated.[2] However, Dr. Field did not disclose this finding to Janice because he believed it unwise to interject another anxiety factor where there was uncertainty as to the significance of Janice's weakened cortical response. Later that same day Dr. Field wrote a letter to Dr. Loop in which he detailed his diagnosis and treatment plan. The letter provides in pertinent part:

---

[1] It appears from the pleadings that plaintiff informed Dr. Loop during a visit to his office on February 7, 1986, that she had been experiencing similar symptoms since the summer of 1985.

[2] A slowing in the electrical conduction through the brain from the thalamus to the cortex.

> I suspect that we are seeing a lady who has probably had some minor irritation or some stretching of her brachial plexus associated with the fall with some persistent paresthesia associated with paracervical muscle tightness associated with that and I would be inclined to have her continue with therapy until the symptoms have subsided. We did talk to her about NMR scanning as well as a spinal fluid examination but felt, at this point, that since her examination was really entirely negative, that probably it was just as well to wait for a little bit before going ahead with any of the studies.

Janice's condition grew steadily worse. Her numbness increased and she developed a feeling of paralysis on her left side. She tried going to a chiropractor. She took a glucose test for diabetes. She saw a psychiatrist. She even tried going to Florida where she could rest and lie in the sun. Nothing worked. On her return from Florida, Janice experienced small convulsions in the shoulder area. Ronald Tyler telephoned Dr. Field and informed him of the convulsions. Dr. Field ordered Janice taken to St. Mary's Hospital in Saginaw.

There, a CAT scan disclosed that Janice had suffered strokes caused by an occluded carotid artery.[3] As a result of these strokes, Janice had residual paralysis in the left arm, weakness in the left leg which causes her to walk with a cane, and spasticity of the left hip.

On January 5, 1988, plaintiffs filed a complaint alleging that Dr. Field was negligent in failing to perform magnetic resonance imaging or a CAT scan following Dr. Loop's referral to him on February 17, 1986. Accompanying the complaint was an "affidavit of merit" averring that "written affirma-

---

[3] One of two main arteries, one on each side of the neck, which supply blood to the head. 1 Schmidt's Attorneys' Dictionary of Medicine, p C-58.

tion has been obtained from a licensed health care professional that the case has merit."

Defendant Field's answer was filed February 14, 1988. Under MCR 2.301(A) plaintiffs had one year from the date of defendants' answer to complete discovery, unless the court set another date by pretrial order.

The depositions of plaintiffs and defendant doctors were taken in June and July, 1988.

On August 5, 1988, seven months after suit was filed, Dr. Field moved for summary disposition under MCR 2.116(C)(10). Dr. Field supported his motion with his own affidavit expressing his expert opinion that his conduct had met the requisite standard of professional care and incorporating by reference his deposition which described in detail the procedures followed. In his deposition Dr. Field indicated that he had performed a complete neurological examination. He further indicated that he had suggested and advised plaintiff to submit to magnetic resonance imaging and a spinal tap, but Janice refused. Dr. Field also supported his motion for summary disposition with Janice's responses to interrogatories, propounded by Dr. Field, in which Janice averred that the names of expert witnesses were unknown at the time interrogatories were answered.

Plaintiffs responded to the motion on August 17, 1988, denying that Dr. Field recommended further tests during the February 17, 1986, office visit and incorporating by reference Ronald Tyler's deposition that his wife's visit with Dr. Field was "no more than five minutes." Plaintiffs further argued that they had consulted with several experts who may be named as expert witnesses, but because the time for discovery had not yet expired and no pretrial or scheduling conferences had been set,

Dr. Field's motion for summary disposition should be denied as premature.

Oral argument on the motion was held on August 22, 1988, at which counsel for plaintiffs stated plaintiffs' deposition taken by defendants had been received by plaintiffs only the previous week and it would be unreasonable to require plaintiffs to name an expert until the expert had sufficient opportunity to review the deposition. On September 21, 1988, without a pretrial conference, the trial court issued an order, consisting of a standardized form, scheduling the remainder of the events to occur prior to trial. Under this order discovery was to be completed no later than 270 days from entry of the order (viz., June 21, 1989), and plaintiffs were to name their expert witnesses 21 days from the date of the order (viz., October 12, 1988).

Plaintiffs did not object to the time limits imposed nor did they name their expert witnesses as required by the order. On October 28, 1988, more than two weeks after the time to name expert witnesses had expired, the trial court issued a written opinion granting Dr. Field's motion for summary disposition. The court explained:

> The defendant has filed an affidavit indicating that the treatment rendered by the defendant was within the standard of care. The plaintiffs have not filed an affidavit or other documentary evidence which counters the defendant's affidavit on this point, as required by MCR 2.116(G)(4). Therefore, there is no genuine issue of fact presented as to whether Dr. Field's treatment of plaintiff Janice Tyler met the standard of care.

The order granting summary disposition was entered on November 14, 1988.

Plaintiffs moved for reconsideration and, for the

first time, offered expert evidence by way of an affidavit from a Dr. Robert Burton, a neurologist practicing in San Francisco. Dr. Burton's abbreviated affidavit stated that after receiving the medical records and deposition testimony he "finds there were deviations in the standard of care and treatment contrary to the practice of neurological examinations and diagnoses." In a written opinion dated December 15, 1988, the trial court found Dr. Burton's affidavit to be conclusory in nature and not meeting the standards of MCR 2.116(G)(4) and denied reconsideration. An order denying plaintiffs' motion for reconsideration was entered on January 3, 1989.

A motion for summary disposition brought pursuant to MCR 2.116(C)(10) tests whether there is factual support for a claim. In ruling on the motion, the court must consider the pleadings, affidavits, depositions, admissions and other documentary evidence submitted by the parties. The party opposing the motion has the burden of showing that a genuine issue of disputed fact exists and that the disputed factual issues are material to the disposition of a legal claim. The nonmovant may not rest upon mere allegations or denials in the pleadings, but must, by documentary evidence, set forth specific facts showing that there is a genuine issue for trial. Giving the benefit of reasonable doubt to the nonmovant, the court must determine whether a record might be developed which would leave open an issue upon which reasonable minds could differ. All inferences are to be drawn in favor of the nonmovant. Before judgment may be granted, the court must be satisfied that it would be impossible for a claim asserted to be supported by evidence at trial. *W B Cenac Medical Service, PC v Michigan Physicians Mutual Liability Co,* 174 Mich App 676, 681; 436 NW2d 430 (1989).

In the instant case, Dr. Field's conclusions are based on facts that are in dispute. Dr. Field's deposition testimony was to the effect that he advised Janice that she should submit to nuclear magnetic resonance tests and a spinal tap but she refused. His affidavit averring that he had met the requisite standard of care was based upon those facts. On the other hand, Janice and Ronald Tyler's deposition testimony disclaimed any mention to them of conducting further tests. Where factual questions exist as to what a doctor did or did not do as regards the treatment rendered to a patient, those factual questions are best resolved by a jury. Cf. *Baldwin v Williams,* 104 Mich App 735, 739-740; 306 NW2d 314 (1981), lv den 412 Mich 873 (1981).

Moreover, we find merit in plaintiffs' claim that summary disposition was premature. *Kortas v Thunderbowl & Lounge,* 120 Mich App 84, 87; 327 NW2d 401 (1982). The problem lies in that portion of the trial court's September 21, 1988, scheduling order which required plaintiffs to name their expert witnesses within twenty-one days. We find that part of the otherwise proper order premature. Defendants' motion for summary judgment was filed only a week or so after plaintiffs' depositions had been received by plaintiffs' counsel. Several medical witnesses whose testimony would be relevant for purposes of an expert's formulating an opinion on the adequacy of the standard of care provided had yet to be deposed. Specifically, the chiropractor and the physical therapist had yet to be deposed and, in fact, were not deposed until November, 1988. To expect an expert witness to formulate a sound medical opinion within a twenty-one day period when all relevant facts were not yet available for purposes of forming that opinion is unreasonable. Therefore, we are uncon-

vinced that the instant case presents a situation where it could yet be said that it was impossible for the claim to be supported at trial because of an insurmountable deficiency. *Id.,* p 88.

Accordingly, we conclude that the trial court erred in granting summary disposition.

Reversed and remanded. We do not retain jurisdiction.