MEEK v DEPARTMENT OF TRANSPORTATION

Docket No. 202971. Submitted February 1, 2000, at Lansing. Decided
    March 3, 2000, at 9:10 A.M.

    Suzanne Meek, as personal representative of the estate of Richard D.
        Meek, deceased, brought an action under the wrongful death act in
        the Court of Claims against the Michigan Department of
        Transportation, seeking damages pursuant to the highway excep-
        tion to governmental immunity, MCL 691.1402(1); MSA
        3.996(102)(1). Richard Meek was killed from blunt force chest inju-
        ries and smoke and soot inhalation when the tanker truck that he
        was driving slid on the wet pavement of the connector ramp lead-
        ing from eastbound I-94 to southbound I-96 in the city of Detroit
        and struck the nine-inch barrier curb located on the left side of the
        ramp, causing the tanker to overturn on its left side and catch fire.
        The plaintiff alleged that Richard Meek's death resulted from the
        defective design and construction of the connector ramp, including
        the installation of the barrier curb, the lack of an adequate shoul-
        der, inadequate superelevation, inadequate signage, the use of a
        vertical curve that preceded a horizontal curve, and the use of an
        inadequate radius for the horizontal curve. Following a bench trial,
        the court, Michael J. Callahan, J., held that the barrier curb was
        part of the traveled surface of the highway within the meaning of
        the highway exception, found that the absence of a curve sign and
        the presence of the barrier curb were proximate causes of the acci-
        dent and the resulting death, held that Richard Meek's speed was
        not a superseding cause of the accident, found that Richard Meek
        was comparatively negligent, and awarded a substantial judgment
        for the plaintiff, including substantial awards for conscious pain
        and suffering and for loss of society and companionship. The
        defendant appealed.

        The Court of Appeals held:

        1. The highway exception to the general grant of statutory immu-
    nity imposes on the state liability for damages resulting from the
    state's failure to keep in reasonable repair the improved portion
    designed for vehicular travel of any highway under its control. The
    language limiting the state's liability to the reasonable repair and

maintenance of the "improved portion of the highway designed for vehicular travel" has been interpreted to include those portions of a highway that while not part of the normally traveled roadbed nevertheless are intended and designed for vehicular travel, such as highway shoulders, and those conditions that while not necessarily a physical part of the roadbed itself nevertheless directly affect vehicular travel on the improved portion of the roadway and that if not properly designed or maintained make travel not reasonably safe, such as traffic control devices and warning signs.

2. The barrier curb and adjoining gutter pan at issue were part of the improved portion of the highway. Accordingly, the trial court properly held that the defendant could be held liable for injuries resulting from any faulty design of the barrier curb.

3. The trial court properly held as a matter of law that the failure to place a curve warning sign on the ramp in accordance with the mandates of the manual regarding the placement and use of traffic control devices created a point of danger that directly affected the improved portion of the highway so as to bring the defendant's failure to provide such a sign within the scope of the highway exception. The trial court's finding of fact that the lack of proper signage was a proximate cause of the accident was not clearly erroneous, there being sufficient evidence to establish that the lack of proper signage was a contributing factor in causing the accident.

4. The evidence adduced at trial that the defendant's failure to provide proper signage and to maintain a high-friction surface on the ramp roadway and that the defendant's use of the particular type of barrier curb on the ramp all contributed to causing the accident was sufficient to support the trial court's conclusion that the defendant's design and maintenance of the ramp proximately caused the accident and that the type of accident was a foreseeable result of the defendant's failure to design and maintain the ramp in a manner to make it reasonably safe.

5. Because it was reasonably foreseeable that drivers like Richard Meek might exceed the advisory speed posted for the ramp in question, the court did not err in finding that Richard Meek's speed, even though it might be an intervening contributing cause of the accident, was not an intervening superseding cause of the accident.

6. Because there was evidence that death was not instantaneous, the evidence supported the trial court's awarding of damages for pain and suffering. The trial court's award for pain and suffering, although substantial, cannot be said to be clearly erroneous.

7. The trial court's award of damages for loss of society and companionship, although substantial, cannot be said to be clearly erroneous.

Affirmed.

1. GOVERNMENTAL IMMUNITY — HIGHWAYS — IMPROVED PORTION OF HIGHWAY.

    The reference in the highway exception to the general statutory grant of governmental immunity to the "improved portion of the highway designed for vehicular travel" includes not only the normally traveled roadbed but also those portions of a highway that are not part of the normally traveled roadbed but that were nevertheless intended and designed for vehicular travel, such as highway shoulders, and those conditions of the highway that while not necessarily a physical part of the roadbed itself nevertheless directly affect vehicular travel on the improved portion of the roadway and that if not properly designed or maintained make travel not reasonably safe, such as traffic control devices and warning signs (MCL 691.1402[1]; MSA 3.996[102][1]).

2. GOVERNMENTAL IMMUNITY — HIGHWAYS — EXPRESSWAY ENTRANCE RAMPS — CURBS AND GUTTERS.

    A barrier curb and adjoining gutter pan of an entrance ramp of an expressway may properly be found to be part of the improved portion of the highway designed for vehicular traffic for the purpose of the highway exception to statutory governmental immunity (MCL 691.1402[1]; MSA 3.996[102][1]).

3. GOVERNMENTAL IMMUNITY — HIGHWAYS — EXPRESSWAY ENTRANCE RAMPS — CURVE SIGNS.

    The failure to provide a curve sign on an entrance ramp of an expressway may properly be found to have caused a point of danger such as will render the state liable for damages pursuant to the highway exception to the statutory governmental immunity (MCL 691.1402[1]; MSA 3.996[102][1]).

*Schreier & Weiss, P.C.* (by *Sherwin Schreier, Mark Schreier,* and *Alyce M. Haas*), for the plaintiff.

*Jennifer M. Granholm,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Brenda E. Turner* and *Harold Martin,* Assistant Attorneys General, for the defendant.

Before: MCDONALD, P.J., and DOCTOROFF and NEFF, JJ.

NEFF, J. Defendant, Michigan Department of Transportation, appeals as of right from a judgment for plaintiff, Suzanne Meek, as personal representative of the estate of Richard Meek, deceased, following a bench trial in this wrongful death action under the highway exception to governmental immunity, MCL 691.1402(1); MSA 3.996(102)(1). We affirm.

I

The basic facts in this case are undisputed. The decedent, Richard Meek, was killed in a single-vehicle accident on a freeway connector ramp in Detroit at approximately 6:30 P.M. on April 16, 1992, when the Mobil Oil tanker truck he was driving struck a nine-inch barrier curb, overturned, and caught fire.

Meek was an experienced tanker driver. On the night of the accident, he was en route to make fuel deliveries and had just filled the tanker with 9,000 gallons of gasoline. He was traveling on eastbound I-94 in the city of Detroit. It had been raining and the pavement was wet. Meek turned off eastbound I-94 onto the connector ramp to southbound I-96.[1] The ramp has a vertical incline and, at the crest, declines into a horizontal curve. At the beginning of the incline are two signs, reading "Ramp 35 mph," which is an advisory speed. Meek was traveling in the left lane of the two-lane connector ramp, at approximately forty to forty-five miles an hour. The right side of the ramp had a paved shoulder. The left side of the ramp was bordered by a gutter pan, approximately two feet

---

[1] In the lower court record, this freeway is referred to both as "eastbound I-96" and "southbound I-96."

wide, with a flat-faced barrier curb, nine-inches high and six inches wide, along the top.

According to an eyewitness, as Meek entered the curve in the ramp, the tanker slid to the left. The left rear tire hit the barrier curb and the tanker overturned on its left side. It slid down the connector ramp and hit a second nine-inch barrier curb, rupturing the front compartment of the tank. The gasoline ignited, causing an explosion and fire.

Meek died in the accident. The cause of death was listed as blunt force injury to the chest and smoke and soot inhalation. Although his principal injuries were only broken ribs, Meek's body was charred and partially dismembered in the wreckage.

II

Meek's wife, Suzanne, filed this wrongful death action on behalf of Meek's estate, claiming that defendant failed to design, construct and maintain the highway so that it was reasonably safe and convenient for public travel.[2] It was plaintiff's contention that Meek's death was caused by the defective design and construction of the connector ramp: the barrier curbs in the outside lane, the lack of adequate shoulders, inadequate superelevation (banking), inadequate signing, a vertical curve that precedes a horizontal curve, and an inadequate radius.

---

[2] The wrongful death action was filed in the Court of Claims and was later joined with a products liability action pending in the Wayne Circuit Court against Fruehauf Corporation. The action against Fruehauf Corporation was settled. The instant action proceeded to trial with the Wayne circuit judge sitting as the Court of Claims.

Defendant claimed that the alleged defects were not within the highway exception to governmental immunity because the barrier curb was not included in the portion of the highway designed for vehicular travel and that defendant had no duty to make a reasonably safe ramp even safer by increasing the curve radius and superelevation or adding curve signs. Further, there was no evidence that a curve sign would have prevented the accident. Defendant alleged that Meek's excessive speed was a superseding cause of the accident, thereby absolving defendant of liability.

The court found in favor of plaintiff and awarded a judgment of $4,276,329, including $1,500,000 for conscious pain and suffering and $1,500,000 to Suzanne for loss of society and companionship. However, the court found Meek to be forty-five percent comparatively negligent, largely because of excessive speed, and reduced the judgment to $2,351,981.[3]

III

Defendant first claims that it has no liability under the highway exception to governmental immunity with respect to the barrier curb because curbing falls outside defendant's scope of duty to maintain the improved portion of the highway. We disagree. Whether a duty arises under the highway exception is a question of law, subject to review de novo. *Pick v Szymczak*, 451 Mich 607, 612, 615; 548 NW2d 603 (1996); *Simko v Blake*, 448 Mich 648, 655; 532 NW2d 842 (1995).

---

[3] Following posttrial motions for various adjustments, the court entered an amended judgment of $2,175,126.

A

The highway exception to governmental immunity is set forth in MCL 691.1402(1); MSA 3.996(102)(1), which at the time of the incident at issue,[4] provided:

> Each governmental agency having jurisdiction over any highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. Any person sustaining bodily injury or damage to his or her property by reason of failure of any governmental agency to keep any highway under its jurisdiction in reasonable repair, and in condition reasonably safe and fit for travel, may recover the damages suffered by him or her from the governmental agency. . . . The duty of the state and the county road commissions to repair and maintain highways, and the liability therefor, shall extend only to the improved portion of the highway designed for vehicular travel and shall not include sidewalks, crosswalks or any other installation outside of the improved portion of the highway designed for vehicular travel.

The extent of the highway exception has been the subject of much debate in the appellate courts. *Pick, supra* at 624. Nevertheless, the Supreme Court has "found the legislative purpose for the highway exception clear: 'to enhance the safety of public travel upon state-owned highways.' " *McIntosh v Dep't of Transportation*, 234 Mich App 379, 382; 594 NW2d 103 (1999), quoting *Chaney v Dep't of Transportation*, 447 Mich 145, 154; 523 NW2d 762 (1994). This purpose is a guiding factor in interpreting the highway exception. *Id.*

The Court in *Chaney, supra* at 155, indicated that the holding of *Roy v Dep't of Transportation*, 428

---

[4] The provision was amended by 1996 PA 150, with minor changes in the language. The changes do not affect the substantive analysis of the issue presented.

Mich 330, 340; 408 NW2d 783 (1987), was "that a bicycle path adjacent to, but separate and detached from, a highway was not part of the improved portion of that highway designed for vehicular travel." However, the Court went on to note, *Chaney, supra* at 157, that the holding of *Gregg v Dep't of State Hwys*, 435 Mich 307; 458 NW2d 619 (1990), was "that a bicycle path running between the traveled portion of a highway and its paved shoulder comprised part of the improved highway 'designed for vehicular travel.'"

The Court in *Chaney, supra* at 157-158, explained the holding in *Gregg, supra,* was that although highway shoulders were not normally traveled roadbed, they were nevertheless intended and designed for vehicular travel. "We held that the highway exception must be tempered by common experience, and that certain installations located beyond the traveled or paved roadway 'are essential to a safe modern highway' so as not to be excluded from the highway exception." *Chaney, supra* 158, quoting *Gregg, supra* at 315.

More recently, in *Pick, supra* at 621, the Supreme Court stated that a bright-line rule limiting governmental responsibility for public roadways to factors that are physically part of the roadbed itself required an improperly stringent reading of the highway exception. The Court held that "a duty is imposed on governmental agencies to provide traffic control devices or warning signs at, or in regard to, points of hazard affecting roadways within their jurisdiction." *Id.* at 624. In so holding, the Court expressly rejected a myopic focus on the phrase "the improved portion of the highway" and set forth what it believed was a

more "workable principle" for applying the highway exception. *Id.* at 622, 624.

> We define "point of hazard" (or "point of special danger") as any condition that directly affects vehicular travel on the improved portion of the roadway so that such travel is not reasonably safe. To be a point of hazard for purposes of the highway exception, the condition must be one that uniquely affects vehicular travel on the improved portion of the roadway, as opposed to a condition that generally affects the roadway and its surrounding environment. We reemphasize, however, that such conditions need not be physically part of the roadbed itself. [*Id.* at 623.]

### B

In this case, given the physical construction of the connector ramp at issue, we conclude that the barrier curb must be considered part of the improved portion of the highway designed for vehicular travel and comes within the highway exception to governmental immunity. The ramp is, in effect, a single continuous installation, from the right shoulder to the barrier curb at the left. To legally dissect the highway at the point where the gutter pan meets the barrier curb and to find that the barrier curb is not part of the improved portion of the highway designed for vehicular travel is contrary to the tenor of case precedent and the legislative purpose underlying the highway exception. Such a dissection would also fly in the face of common sense and of physical reality, as is clearly illustrated in the photograph that was admitted at trial as defendant's Exhibit 112 and is attached to this opinion as Attachment A.

The barrier curb at issue is contiguous with and attached to the gutter pan, which borders the outer-

most travel lane around the curve of the connector ramp. At approximately two feet in width, the gutter pan is, in effect, a narrow shoulder, cut off by the barrier curb. The barrier curb defines the edge of the highway.

The Supreme Court has recognized that the shoulder is part of the improved portion of the highway designed for vehicular travel. *Gregg, supra* at 314-315. In this case, the gutter pan and barrier curb on the left side of the ramp should not be viewed differently, from a legal standpoint, than the shoulder on the right side of the ramp. That vehicles are prone to traveling across the gutter pan is evident from defendant's apparent purposes for constructing the barrier curb: to control drainage run-off, to visibly and physically define the edge of the traveled way, and *to deflect vehicles back into the ramp.* Defendant is not absolved from liability for including the barrier curb in a purposeful design on the ground that is not part of the improved portion of the highway.

IV

Defendant claims that the absence of a curve warning sign was not a special point of danger because the curve was fully visible and that the lack of signage was not a defect that contributed to Meek's accident. We disagree. The trial court's finding of noncompliance with the Michigan Manual of Uniform Traffic Control Devices (MMUTCD), along with its findings regarding the barrier curb and the highway patina, and other evidence, support a conclusion that the connector ramp curve was a point of special danger.

A

Generally, whether a duty exists is a question of law, subject to review de novo. *Pick, supra* at 612, 615; *Simko, supra* at 655. "[T]he issue of the adequacy of existing signals vis-a-vis negligence with respect to the statutory duty to maintain a highway in a state of reasonable repair is one of law." *Wechsler v Wayne Co Rd Comm*, 215 Mich App 579, 592; 546 NW2d 690 (1996). Further, the determination whether the state has maintained a highway in reasonable repair and provided roads that are reasonably safe must be made by an overview of the factors in a given case. *McKee v Dep't of Transportation*, 132 Mich App 714, 726; 349 NW2d 798 (1984). Such factors include the danger imposed by the defect or lack of a safety device, the increase in safety with the new device or design, and the cost of repair or installation. *Id.*

The issue of proximate cause is generally a question of fact, which, when decided by a court sitting without a jury, is reviewed for clear error. *Helmus v Dep't of Transportation*, 238 Mich App 250, 257; 604 NW2d 793 (1999); *McKee, supra* at 722. A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been committed. *Id.*

B

The trial court found "that lack of a curve sign violates the MMUTCD requirements and contributes to the negligent maintenance of this connector ramp." The court ultimately held that this factor, among others,

contributed to the defective design and maintenance of the connector ramp, which was the proximate cause of the accident. The court found other contributing factors to be the barrier curb and the improperly maintained surface (patina) and concluded: "the highway should have been made forgiving by eliminating or signing surprising hazards."

C

A point of special danger or hazard is any condition that directly affects vehicular travel on the improved portion of the roadway so that such travel is not reasonably safe. *Pick, supra* at 623. To be a point of hazard for purposes of the highway exception, the condition must be one that uniquely affects vehicular travel on the improved portion of the roadway, as opposed to a condition that generally affects the roadway and its surrounding environment. *Id.*

The connector ramp at issue veers off from eastbound I-94 into a long ascent. Numerous photographs were admitted at trial, providing a photographic log of the ramp's configuration and a visual perspective at continuous points along the ramp.[5] The photographic log shows that the curve is not visible at the beginning of the ascent. According to plaintiff's highway expert, Howard Anderson, the curve is on a five percent downgrade, which in Michigan is "quite

---

[5] At the beginning of the ramp, there are two advisory speed signs indicating "Ramp 35 mph," one on each side of the highway. At the top of the vertical incline, eastbound (I-96 southbound) and westbound traffics diverge. There, two overhead signs with diagonal arrows direct traffic into the appropriate lanes to travel east or west on I-96. Beyond the point of the overhead sign, the ramp descends into a downward horizontal curve, which eventually merges with an adjacent incoming ramp from westbound I-94.

severe" and vehicles would have a tendency to accelerate through the curve. Anderson testified that the lack of signage made the curve unsafe: not until a driver approaches the vertical crest is the curvature seen, which prevents the driver from judging an appropriate maximum speed. Anderson maintained that there should have been a curve sign in addition to the speed advisory and indicated that such signs are discussed in the MMUTCD and cost approximately $95.

The trial court found that the MMUTCD required a curve sign. This finding is not clearly erroneous. The MMUTCD provided:

> The Curve sign shall be used to denote changes in the horizontal alignment of all roads (except minor roads and streets where in the judgment of the engineer the use of this sign is unnecessary) where a ball bank indicator or Devil Level registers 10° or more at speeds between 30 and 60 miles per hour, and at such other locations where the change in alignment of the roadway is not apparent to the driver.

Evidence established that the ball bank indicator read "twelve" at the advisory speed of thirty-five miles an hour. According to the MMUTCD, the word "shall" indicates a mandatory condition. The evidence supported the court's finding of noncompliance.

Compliance with traffic manual standards is a factor that may be considered in determining the reasonableness of the state's actions with regard to an accident. *Boccarossa v Dep't of Transportation*, 190 Mich App 313, 316; 475 NW2d 390 (1991); *Salvati v Dep't of State Hwys*, 415 Mich 708, 715; 405 NW2d 856 (1982). The court did not err in finding that noncompliance with the MMUTCD was a contributing factor

that made the connector curve a point of special danger.

Plaintiff also presented evidence that the accident rate for the curve was excessive and reflected an unusually high number of rollovers, particularly in wet road conditions. We conclude that the curve was a point of special danger imposing a duty on defendant to provide a warning.

### V

Defendant contends that Meek's excessive speed was the intervening, superseding cause of the accident, breaking any causation attributable to barrier curbing, the absence of a curve warning sign, and the highway patina. Generally, the question whether an intervening act is a superseding cause relieving the defendant of liability is a question for the factfinder. *Coy v Richard's Industries, Inc*, 170 Mich App 665, 669; 428 NW2d 734 (1988). The court did not err in concluding that's Meek's speed was not a superseding cause of the accident.

### A

Defendant first argues that the evidence failed to support the court's finding of causation. This argument is without merit. Proof of causation requires both cause in fact and proximate cause. *Wechsler, supra* at 596, n 11. Cause in fact requires that the harmful result would not have come about but for the defendant's negligent conduct. *Id.*; *Skinner v Square D Co*, 445 Mich 153, 162-163; 516 NW2d 475 (1994). "Proximate cause includes an evaluation of the foreseeability of consequences and whether a defendant

should be held legally responsible for such consequences." *Wechsler, supra* at 596.

Cause in fact may be established by circumstantial evidence; such proof must be subject to reasonable inferences, but must not be mere speculation. *Skinner, supra* at 163-164. Contrary to defendant's arguments, there was evidence with respect to all three factors from which the court could reasonably infer causation.

Anderson testified that the patina, the curb, and the signage were among the areas of hazard that made the ramp not reasonably safe and convenient for public travel:

> Curbs, both inside and out but primarily outside. The super elevation, the downhill grade combined with the super elevation, the signing, the friction of the asphalt that's there. And I think those are the primary factors other than not doing anything with the accident data that was available.

He testified that it was important to monitor accident data to provide safe highways, in part because, as a highway wears, the likelihood of a wet weather accident by sliding increases because of the loss of friction. According to Anderson, the high number of wet weather accidents indicated that there was a friction problem or superelevation problem. He noted that the number of accidents involving the curb was quite prominent. In Anderson's opinion, the accident data should have triggered some action by defendant with respect to corrective measures. The pavement was wet at the time of Meek's accident. The court did not err in finding that the condition of the highway

surface and reduced friction contributed to the accident.

Regarding the curb and the lack of a curve sign, as discussed earlier, there was ample evidence concerning these factors from which the court could infer that they contributed to the rollover accident. Anderson testified that Meek would have been hampered by the curve visibility problem in judging his maximum speed. Plaintiff's accident reconstruction expert testified that in his opinion the curb was a causative factor in the rollover. Anderson also testified that if the highway had been constructed the way it should have been, Meek's accident would have been prevented. An eyewitness testified that about halfway onto the ramp, she saw the trailer start to slide to the left and thought it struck the curb with the left rear tire before overturning. This testimony, along with the photographic evidence and the highway design evidence, supported the court's finding that the accident was foreseeable and provided ample basis for the court's finding of causation.

B

An intervening cause, one which actively operates to produce harm to another after the negligence of the defendant, may relieve a defendant from liability. *Poe v Detroit*, 179 Mich App 564, 577; 446 NW2d 523 (1989). An intervening cause is not a superseding cause if it was reasonably foreseeable. *Hickey v Zezulka · (On Resubmission)*, 439 Mich 408, 437 (BRICKLEY, J.), 447 (RILEY, J.); 487 NW2d 106 (1992), amended 440 Mich 1203 (1992). Where the defendant's negligence consisted of enhancing the likelihood that the intervening cause would occur or consisted

of a failure to protect the plaintiff against the risk that occurred, the intervening cause was reasonably foreseeable. *Id.* at 438 (BRICKLEY, J.), 447 (RILEY, J.).

There was evidence that the traffic traveling on the connector ramp routinely exceeded the speed advisory. Expert testimony established that there has been a high number of accidents on the connector ramp, including a high number of rollovers, and that this result was connected to the design and maintenance of the ramp. Further, these rollovers included a number of commercial vehicles. It cannot be said that it was not foreseeable that drivers like Meek would be traveling on the ramp above the speed advisory rate.

VI

Defendant contends that the court erred in the award of noneconomic damages for conscious pain and suffering and loss of society and companionship. We disagree. In bench trials, this Court reviews the award of damages under the clearly erroneous standard. *Peterson v Dep't of Transportation*, 154 Mich App 790, 799; 399 NW2d 414 (1986). A reviewing court may not set aside a nonjury award merely on the basis of a difference of opinion. *Id.* at 800.

A

Defendant claims that plaintiff was not entitled to the award of $1.5 million for pain and suffering because there was no evidence that Meek was conscious between the time of injury and death. Reasonable compensation may be awarded for pain and suffering of the decedent while conscious during the

intervening time between injury and death. *Byrne v Schneider's Iron & Metal, Inc*, 190 Mich App 176, 180; 475 NW2d 854 (1991). The existence of pain and suffering may be inferred from other evidence that does not explicitly establish the fact. *Id.*

Eyewitness testimony indicated that Meek appeared to be trying to regain control of the truck before it hit the curb and overturned. The autopsy indicated that Meek was alive at the point of the fire and was not killed instantaneously in the accident. Although the evidence did not indicate the point at which Meek lost consciousness, it could be inferred that he was conscious certainly in the initial moments of the accident and would have been frightened or shocked during the moments that the truck was out of control and overturned. We are not convinced that the trial court's award of damages for pain and suffering is clearly erroneous.

B

Defendant next contends that the award to Suzanne was excessive, given her brief two-year marriage to Meek and the fact that the couple had no children together. Awards for personal injury damages, particularly pain and suffering, rest within the sound discretion of the trier of fact, and there is no absolute standard for the measurement of such damages. *Peterson, supra* at 799. An appellate court reviewing a personal injury award should decide each case on its own facts, although analogous cases may be one factor considered. *Precopio v Detroit*, 415 Mich 457, 471-472; 330 NW2d 802 (1982).

There was evidence of a close relationship between Suzanne and Meek over a six-year period. The couple traveled together on vacations, bowled in several leagues, fished together, and grocery shopped together. According to Suzanne, they "were together all the time." Meek did the larger portion of the household chores for the couple. The family was close. Suzanne testified about her difficulties since Meek's death, her stress, psychological counseling, medication, work absences, depression, and her sense of personal loss. Given the evidence, the trial court's award of damages was not clearly erroneous.

Affirmed.

## ATTACHMENT A