*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BONNIE JONES and DAN JONES,

       Plaintiffs-Appellants,

v

ASCENSION GENESYS HOSPITAL and
GENESYS HEALTH SYSTEM,

       Defendants,

and

GREATER MICHIGAN ORTHOPEDICS,
GREATER FLINT SPORTS MEDICINE CENTER
PC, and BRUCE DOUGLAS LAWRENCE,

       Defendants-Appellees.

UNPUBLISHED
November 12, 2024
2:22 PM

No. 365080
Genesee Circuit Court
LC No. 20-114067-NH

Before: JANSEN, P.J., and RICK and PATEL, JJ.

PER CURIAM.

Plaintiffs, Bonnie Jones (Bonnie) and Dan Jones (Dan), appeal by leave granted[1] the trial court's February 2, 2023 order, which granted partial summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact) in favor of defendants, Greater Michigan Orthopedics; Greater Flint Sports Medicine Center, PC; and Bruce Douglas Lawrence (Dr. Lawrence). We reverse and remand for further proceedings.

## I. BACKGROUND

On September 14, 2017, Bonnie presented to defendant, Ascension Genesys Hospital, for a total hip replacement. Dr. Lawrence performed the surgery on Bonnie's right hip. During the

---

[1] *Jones v Ascension Genesys Hosp*, unpublished order of the Court of Appeals, entered August 18, 2023 (Docket No. 365080).

surgery, it was discovered that a size-seven, high impact femoral stem implant was not in the operation suite. After 45 minutes of searching, it could not be located. Dr. Lawrence inserted what he described as a "suboptimal" femoral stem implant and completed the surgery. After surgery was complete, it was discovered that the size-seven, high impact femoral stem implant was locked in a cabinet. On September 15, 2017, the day after surgery, the hip implant dislocated while Bonnie engaged in physical therapy with Jeanne Kay, a physical therapist, and John Mead, a physical therapy student, at Ascension Genesys Hospital. On September 19, 2017, the original hip implant was surgically replaced by Dr. Lawrence, but Bonnie continued to experience issues.

In March 2020, plaintiffs filed suit, alleging medical malpractice and loss of consortium. The complaint was accompanied by affidavits of merit, which were executed by Dr. Jeffrey Meisles, a board-certified orthopedic surgeon; and William Buchanan, "a practicing certified physical therapist in orthopedic surgery." Greater Michigan Orthopedics, Greater Flint Sports Medicine Center, and Dr. Lawrence answered the complaint and generally denied liability. They also presented affidavits of meritorious defense.[2]

Discovery commenced. Dr. Lawrence was deposed. Dr. Lawrence testified, despite referring to the surgical implant he used in the first surgery as "suboptimal," that he believed Bonnie's hip was stable when he completed the first surgery. Dr. Lawrence opined Bonnie was placed in an "unsafe position" and possibly fell while engaged in physical therapy on September 15, 2017. Buchanan was also deposed. Buchanan agreed he was unable to offer testimony relating to orthopedic surgery or Dr. Lawrence's actions or inactions. Instead, Buchanan testified that Kay and Mead were negligent in several respects during Bonnie's physical therapy on September 15, 2017.

Before discovery closed, Greater Michigan Orthopedics, Greater Flint Sports Medicine Center, and Dr. Lawrence moved for partial summary disposition, arguing Mead's and Kay's negligence proximately caused Bonnie's injuries. They argued, even when taking all evidence in a light most favorable to plaintiffs, that plaintiffs could not offer "expert testimony to support a reasonable conclusion that 'but for' the actions of Dr. Lawrence, the dislocation would not have occurred." Plaintiffs opposed the motion, arguing genuine issues of material fact existed. Plaintiffs also argued granting summary disposition would be improper because Dr. Meisles had not yet been deposed. In a reply brief, Greater Michigan Orthopedics, Greater Flint Sports Medicine Center, and Dr. Lawrence argued that a superseding cause, i.e., the actions of Kay and Mead, caused Bonnie's injuries.

After hearing oral arguments on December 19, 2022, the trial court granted the motion for partial summary disposition and executed an order stating as such on that date. Although the trial court had already executed an order, Greater Michigan Orthopedics, Greater Flint Sports Medicine Center, and Dr. Lawrence submitted a proposed order under MCR 2.602(B)(3)'s seven-day rule. Plaintiffs objected to the proposed order, which they alleged was too vague, and moved the trial court to settle the record. After reviewing the transcript from the December 19, 2022 hearing and

---

[2] Plaintiffs also filed suit against Ascension Genesys Hospital and defendant, Genesys Health System, in relation to alleged negligence that took place during the September 15, 2017 physical therapy session. Those claims are not relevant to this appeal.

hearing oral arguments, the trial court granted plaintiffs' motion to settle the record in a February 2, 2023 order. The order held Greater Michigan Orthopedics, Greater Flint Sports Medicine Center, and Dr. Lawrence's motion for partial summary disposition was granted. The trial court also entered a separate February 2, 2023 order, granting the motion for partial summary disposition. The orders did not resolve the last pending claims or close the case.

Plaintiffs applied for leave to appeal the February 2, 2023 order, which granted their motion to settle the record and granted partial summary disposition. The trial court stayed the proceedings pending resolution of the application. This Court granted leave. *Jones v Ascension Genesys Hosp*, unpublished order of the Court of Appeals, entered August 18, 2023 (Docket No. 365080).

## II. STANDARD OF REVIEW AND APPLICABLE AUTHORITY

We review "de novo a trial court's decision on a motion for summary disposition." *Bailey v Antrim Co*, 341 Mich App 411, 421; 990 NW2d 372 (2022) (quotation marks and citation omitted). "De-novo review means we review the legal issue independently, without deference to the lower court." *Bowman v Walker*, 340 Mich App 420, 425; 986 NW2d 419 (2022) (quotation marks and citation omitted).

> A motion under MCR 2.116(C)(10) . . . tests the factual sufficiency of a claim. When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ. [*El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (emphasis, quotation marks, and citations omitted).]

"The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition. . . ." *Ass'n of Home Help Care Agencies v Dep't of Health & Human Servs*, 334 Mich App 674, 684 n 4; 965 NW2d 707 (2020) (quotation marks and citation omitted). "Like the trial court's inquiry, when an appellate court reviews a motion for summary disposition, it makes all legitimate inferences in favor of the nonmoving party." *Skinner v Square D Co*, 445 Mich 153, 162; 516 NW2d 475 (1994). "Courts are liberal in finding a factual dispute sufficient to withstand summary disposition." *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018) (quotation marks and citation omitted). "While causation is generally a matter for the trier of fact, if there is no issue of material fact, then the issue is one of law for the court." *Holton v A+ Ins Assocs, Inc*, 255 Mich App 318, 326; 661 NW2d 248 (2003).

When the nonmoving party bears the burden of proof on an essential element of the claim, the moving party may seek summary disposition under MCR 2.116(C)(10) by: (1) demonstrating the nonmoving party will be unable to meet that burden, or (2) submitting affirmative evidence that negates that element. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 7; 890 NW2d 344 (2016). If the moving party meets its burden, the nonmovant can avoid summary disposition "through one of these two courses of action:"

Where the burden of proof at trial on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists. If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted. [*Id.* (quotation marks and citations omitted).]

## III. ANALYSIS

Plaintiffs argue that the trial court erred by granting summary disposition in favor of Greater Michigan Orthopedics, Greater Flint Sports Medicine Center, and Dr. Lawrence. We agree.

In a medical malpractice action, the plaintiff must prove the applicable standard of care, breach of that standard by the defendant, injury, and "proximate causation between the alleged breach and the injury." *Benigni v Alsawah*, 343 Mich App 200, 213; 996 NW2d 821 (2022) (quotation marks and citation omitted). See also MCL 600.2912a(2). Failure to establish any one of these four elements is fatal to a plaintiff's medical malpractice suit. *Cox ex rel Cox v Bd of Hosp Managers for the City of Flint*, 467 Mich 1, 10; 651 NW2d 356 (2002). "[T]he fact that the injury complained of does not ordinarily occur in the absence of negligence must either be supported by expert testimony or must be within the common understanding of the jury." *Locke v Pachtman*, 446 Mich 216, 231; 521 NW2d 786 (1994) (quotation marks and citation omitted).

In relevant part, plaintiffs alleged, "[b]ecause an improper fitting prosthesis was placed and . . . the acetabulum was overreamed," Bonnie (1) suffered a dislocation of her hip; and (2) endured severe pain, emotional damage, an additional surgical procedure, and disfigurement. Plaintiffs also alleged Dr. Lawrence "fail[ed] to warn physical therapy that [Bonnie] was at increased [risk] for dislocation of her hip[.]" The trial court granted summary disposition, in part, based on its conclusion that plaintiffs failed to establish a genuine issue of material fact existed as to whether Dr. Lawrence's use of the "suboptimal prosthetic at the time of surgery was a proximate cause" of Bonnie's alleged injuries.

" 'Proximate cause' is a legal term of art that incorporates both cause in fact and legal (or 'proximate') cause." *Craig ex rel Craig v Oakwood Hosp*, 471 Mich 67, 86; 684 NW2d 296 (2004). "As a matter of logic, a court must find that the defendant's negligence was a cause in fact of the plaintiff's injuries before it can hold that the defendant's negligence was the proximate or legal cause of those injuries." *Id.* at 87. "[A] plaintiff establishes that the defendant's conduct was a cause in fact of his [or her] injuries only if he [or she] set[s] forth specific facts that would support a reasonable inference of a logical sequence of cause and effect." *Id.* (second alteration in original; quotation marks and citation omitted). See also *Estate of Taylor v Univ Physician Group*, 329 Mich App 268, 278; 941 NW2d 672 (2019) ("A medical malpractice plaintiff must present evidence demonstrating a causal link between a defendant's professional negligence and the plaintiff's injury.").

In *Ykimoff v Foote Mem'l Hosp*, 285 Mich App 80, 87; 776 NW2d 114 (2009), we explained:

Generally, an act or omission is a cause in fact of an injury only if the injury could not have occurred without (or "but for") that act or omission. Cause in fact may be established by circumstantial evidence, but the circumstantial evidence must not be speculative and must support a reasonable inference of causation. All that is necessary is that the proof amount to a reasonable likelihood of probability rather than a possibility. The evidence need not negate all other possible causes, but such evidence must exclude other reasonable hypotheses with a fair amount of certainty. Summary disposition is not appropriate when the plaintiff offers evidence that shows that it is more likely than not that, but for defendant's conduct, a different result would have been obtained. [Quotation marks and citations omitted.]

"[L]egal cause or proximate cause normally involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences." *Craig*, 471 Mich at 87 (quotation marks and citation omitted). "A valid theory of causation . . . must be based on facts in evidence." *Id*. "Proximate cause is a question for the jury to decide unless reasonable minds could not differ regarding the issue." *Lockridge v Oakwood Hosp*, 285 Mich App 678, 684; 777 NW2d 511 (2009). See also *Rodriguez v Solar of Michigan, Inc*, 191 Mich App 483, 488; 478 NW2d 914 (1991) ("proximate cause is an issue for the jury, provided that there is evidence from which reasonable persons could draw a fair inference that the injury was caused by negligence.").

Evidence in this case supports hip dislocation, like the one suffered by Bonnie, is a known and accepted complication of hip replacement surgery. However, in a postoperative note, Dr. Lawrence described the femoral stem used in the first surgery as "suboptimal." Dr. Lawrence also noted there was "an increased risk of dislocation which could cause the cup to spin out [and] the hip to dislocate and [require a] second surgery." To support summary disposition in their favor, Greater Michigan Orthopedics, Greater Flint Sports Medicine Center, and Dr. Lawrence relied on Dr. Lawrence's deposition testimony. During the deposition, Dr. Lawrence was asked about his use of the word "suboptimal," and he explained:

> [I]t's not the ideal implant I wanted because I didn't think that was going to reproduce the x-ray image of the other hip the same, and when that kicks out to the side, there is more tension on the abductors, but she had a stable hip. So you know, to say it's suboptimal, it's more it's suboptimal looking at an x-ray and there could be more tension on the abductors.
>
> You can add more length to put more tension on the abductors. I didn't want to make her leg longer than her other side because her hip was stable. So it wasn't the ideal implant in my opinion, but was it going to make—I thought it was unlikely to make a clinical impact on her because the hip was stable and met the goals that I try to do with all my hips.

However, Dr. Lawrence agreed that one of the possible "complications" from inserting the suboptimal implant was dislocation. Dr. Lawrence acknowledged his postsurgical note reflected Bonnie's hip was "not quite as stable because there [was] not tension of the abductors." When asked if the hip would have been more stable if "the correct implant" was used, Dr. Lawrence stated: "It might have been more stable if it was in a not ideal position. I don't know. We don't

test them in a position they aren't supposed to get into, but it's possible." Dr. Lawrence further clarified: "[M]y point is she got into an unsafe position when she fell. So I don't know if it would have made a difference when she's in a position she's not supposed to be in if it would have helped." Dr. Lawrence referred to a portion of his postoperative note that reflected it was "quite unlikely" Bonnie's hip would dislocate. Because Bonnie's hip was "just as stable as every other hip" Dr. Lawrence replaced, he did not warn the physical therapy department about the hip potentially dislocating. Dr. Lawrence testified he was not required to do so.

When asked if he was uncertain if the use of "the suboptimal component" "had anything to do with [Bonnie's] dislocation," Dr. Lawrence confirmed he did not know. Dr. Lawrence believed, however, there were "a multitude of factors that may have contributed" to the dislocation. Dr. Lawrence again referenced Bonnie's "unsafe position," but he noted, "I don't know which one really caused it. I think they all could have contributed." Dr. Lawrence testified: "My opinion is there [were] a multitude of factors, and I think there's one that was the most important, not to belabor the point, that the stem was hidden away," i.e., locked in a cabinet during surgery.

In sum, Dr. Lawrence agreed the use of the size-seven, standard femoral implant could have been a factor in the hip dislocation, which occurred one day after the first surgery. Dr. Lawrence opined "the main reason" for the dislocation occurring was "the [unsafe] position" Bonnie "was put in at the time of the fall or the fall itself." Dr. Lawrence's testimony is consistent with Buchanan's opinion that Bonnie was placed in a position that was likely to cause hip dislocation on September 15, 2017. Indeed, Buchanan testified the physical therapists, Kay and Mead, failed to follow protocol. Nonetheless, as noted by plaintiffs on appeal, "[p]roximate causation in a malpractice claim is treated no differently than in an ordinary negligence claim, and it is well-established that there can be more than one proximate cause contributing to an injury." *Benigni*, 343 Mich App at 214 (quotation marks and citations omitted). "[T]he proper standard for proximate causation in a negligence action is that the negligence must be 'a proximate cause' not 'the proximate cause.' " *Id*. (alteration in original; quotation marks and citation omitted).[3]

Although Dr. Lawrence repeatedly testified the right hip was stable, a "jury is free to credit or discredit *any* testimony." *Kelly v Builders Square, Inc*, 465 Mich 29, 39; 632 NW2d 912 (2001) (emphasis added). In *Woodin v Durfee*, 46 Mich 424, 427; 9 NW 457 (1881), our Supreme Court reversed a directed verdict resting on "undisputed" evidence that "probably ought to have satisfied any one . . . ." It was explained that a jury "may disbelieve the most positive evidence, even when it stands uncontradicted; and the judge cannot take from them their right of judgment." *Id*.

More recently, in *Martin v Ledingham*, 488 Mich 987, 987-988; 791 NW2d 122 (2010); and *Ykimoff*, 285 Mich App at 89-90, the defendant physicians testified they would have acted in

---

[3] Plaintiffs argue they were permitted to plead alternate theories of causation. According to plaintiffs, the trial court improperly concluded Buchanan's testimony precluded claims against Dr. Lawrence. Plaintiffs argue the trial court erred because they were not limited to one potential theory. However, the trial court did not hold plaintiffs were limited to one theory. After considering the deposition testimony of Dr. Lawrence and Buchanan and other record evidence, the trial court found plaintiffs failed to establish a genuine issue of material fact. There is no dispute plaintiffs were permitted to plead alternate theories.

a certain manner if provided with information about a patient's condition. Both this Court and our Supreme Court held a jury was entitled to disbelieve the physicians' testimony, even though the testimony was unrebutted by other evidence. *Martin*, 488 Mich at 987-988; *Ykimoff*, 285 Mich App at 89-90. Our Supreme Court stated in *Martin*, 488 Mich at 988: "[T]he treating physician's averment that he would have acted in a [certain] manner . . . presents a question of fact and an issue of credibility for the jury to resolve."

In sum, when the resolution of a case depends solely on a witness's credibility, summary disposition is inappropriate because a jury question necessarily exists. The trial court in this case was not permitted to grant summary disposition based on a determination that Dr. Lawrence's account of what happened was credible. See *Ass'n of Home Help Care Agencies*, 334 Mich App at 684 n 4 ("The trial court is not permitted to assess credibility" when deciding a motion for summary disposition) (quotation marks and citation omitted). See also *White v Taylor Distrib Co, Inc*, 275 Mich App 615, 626; 739 NW2d 132 (2007), aff'd 482 Mich 136 (2008) (noting that granting "a motion for summary disposition is suspect and improper where the credibility of a witness or deponent is crucial.").

Next, while Greater Michigan Orthopedics, Greater Flint Sports Medicine Center, and Dr. Lawrence argue plaintiffs failed to present "sufficient expert testimony which establishes proximate causation," discovery had not yet closed at the time the motion for summary disposition was filed and oral arguments on the motion for summary disposition were heard. Indeed, oral arguments were held on December 19, 2022. Discovery was not scheduled to close until January 31, 2023, and the trial court was aware that the parties still needed to complete depositions.

In *Stringwell v Ann Arbor Pub Sch Dist*, 262 Mich App 709, 713; 686 NW2d 825 (2004), this Court held that "the lack of discovery before [the] defendant's motion [for summary disposition was decided] deprived [the] plaintiff of the opportunity to more fully ascertain facts relevant to a determination whether her theories are sustainable." We explained:

> Generally, a motion for summary disposition is premature if granted before discovery on a disputed issue is complete. Although summary disposition may nevertheless be appropriate if further discovery does not stand a reasonable chance of uncovering factual support for the opposing party's position, we conclude that there is a reasonable chance that discovery in the instant case will uncover factual support for [the] plaintiff's position. [*Id*. at 714 (quotation marks and citations omitted).]

At the time of the December 19, 2022 hearing, Dr. Meisles and Dr. Klaud Miller, another board-certified orthopedic surgeon, had not yet been deposed. They were offered for deposition in January 2023. The parties disputed which of them was at fault for the failure to depose the experts. Whatever the reason for the delay, there were no arguments that plaintiffs failed to timely identify their experts, including Dr. Meisles. The parties made several scheduling attempts, but the depositions had not yet occurred when the motion for partial summary disposition was filed.

Additional discovery stood a reasonable chance of uncovering factual support for plaintiffs' claims against Dr. Lawrence. Dr. Meisles's affidavit of merit, which was cited in and attached to plaintiffs' response to the motion for summary disposition, was before the trial court.

It supported Dr. Lawrence breached the standard of care in several ways and his actions, or inactions, directly and proximately caused Bonnie's injuries. This is not a case where plaintiffs merely speculated additional discovery may produce evidence to support their claims. See *Caron v Cranbrook Ed Community*, 298 Mich App 629, 646; 828 NW2d 99 (2012) ("Mere speculation that additional discovery might produce evidentiary support is not sufficient."). As such, summary disposition was prematurely granted. See *Stringwell*, 262 Mich App at 713. See also *Tyler v Field*, 185 Mich App 386, 393-394; 460 NW2d 337 (1990) (ruling summary disposition was premature where the plaintiffs' medical witnesses had yet to be deposed).

The trial court also granted summary disposition based on its conclusion that Kay's and Mead's "actions after the surgery were a superseding cause of [Bonnie's] injuries." Plaintiffs argue this was in error.[4] "Proximate cause is that which in a natural and continuous sequence, unbroken by any new, independent cause, produces the injury, without which such injury would not have occurred. . . ." *Auto Owners Ins Co v Seils*, 310 Mich App 132, 157; 871 NW2d 530 (2015) (quotation marks and citation omitted).

> [T]he chain of causation between the defendant's conduct and the plaintiff's injuries may be broken by an intervening or a superseding cause. An intervening cause is one which actively operates in producing harm to another after the actor's negligent act or omission has been committed. An intervening cause breaks the chain of causation and constitutes a superseding cause which relieves the original actor of liability, unless it is found that the intervening act was reasonably foreseeable. Thus, the issue of proximate causation requires focusing on whether the result of conduct that created a risk of harm and any intervening causes were foreseeable. [*Id*. at 157-158 (quotation marks and citations omitted).]

"An act of negligence does not cease to be a proximate cause of the injury because of an intervening act of negligence, if the prior negligence is still operating and the injury is not different in kind from that which would have resulted from the prior act." *Taylor v Wyeth Laboratories,*

---

[4] Plaintiffs argue that Greater Michigan Orthopedics, Greater Flint Sports Medicine Center, and Dr. Lawrence impermissibly raised the superseding-cause argument for the first time in a reply brief, and "[r]eply briefs must be confined to rebuttal of the arguments in the nonmoving party['s] . . . response brief[.]" MCR 2.116(G)(1)(a)(*iii*). Greater Michigan Orthopedics, Greater Flint Sports Medicine Center, and Dr. Lawrence moved for summary disposition based on arguments that plaintiffs could not establish proximate cause. Because "the issue of proximate causation requires focusing on whether the result of conduct that created a risk of harm and any intervening cases were foreseeable," *Auto Owners Ins Co v Seils*, 310 Mich App 132, 158; 871 NW2d 530 (2015) (quotation marks and citation omitted), the superseding-cause argument in the reply brief was a logical extension of the argument in the original motion, and was responsive to plaintiff's challenge to the motion. As such, it was not impermissibly raised for the first time in the reply brief and the trial court did not err by considering its merits.

*Inc*, 139 Mich App 389, 401-402; 362 NW2d 293 (1984) (quotation marks and citation omitted).[5] "Generally, the question whether an intervening act is a superseding cause relieving the defendant of liability is a question for the factfinder." *Meek v Dep't of Transp*, 240 Mich App 105, 118; 610 NW2d 250 (2000), overruled in part on other grounds *Grimes v Mich Dep't of Transp*, 475 Mich 72; 715 NW2d 275 (2006).

In this case, Bonnie's hip dislocated during physical therapy, which she was undergoing because of her hip replacement. Dr. Lawrence knew there was a risk the hip could dislocate if Bonnie was placed in certain positions during physical therapy. Dr. Lawrence's postoperative note reflects his concern that the femoral stem was "suboptimal. . . ." Dr. Lawrence noted there was "an increased risk of dislocation which could cause the cup to spin out [and] the hip to dislocate and [require a] second surgery." Dr. Lawrence referenced Bonnie was "at serious risk of complications of her surgery." Importantly, "[w]here the defendant's negligence consisted of enhancing the likelihood that the intervening cause would occur or consisted of a failure to protect the plaintiff against the risk that occurred, the intervening cause was reasonably foreseeable." *Meek*, 240 Mich App at 120-121.

However, because Dr. Lawrence testified the right hip was stable, "there could exist a reasonable difference of opinion as to foreseeability of [the] particular risk" and the "reasonableness of [Dr. Lawrence's] conduct with respect to that risk," the issue is for the jury. *Richards v Pierce*, 162 Mich App 308, 318; 412 NW2d 725 (1987). Even if Mead and Kay were negligent, negligent medical care in the treatment of an injury is typically considered foreseeable. *Id.* at 317. Therefore, any allegedly negligent medical care on the part of Mead and Kay would not necessarily absolve Dr. Lawrence of liability. See *Taylor*, 139 Mich App at 402 ("An intervening cause is not an absolute bar to liability if the intervening event is foreseeable, though negligent or even criminal.")

The trial court erred by granting summary disposition in favor of Dr. Lawrence. Consequently, the trial court erred by granting summary disposition on the related vicarious liability claims against Greater Michigan Orthopedics and Greater Flint Sports Medicine Center. See generally *Mueller v Brannigan Brothers Restaurants and Taverns, LLC*, 323 Mich App 566, 581; 918 NW2d 545 (2018); *Potter v McLeary*, 484 Mich 397, 424-425; 774 NW2d 1 (2009). In so holding, we acknowledge Greater Michigan Orthopedics, Greater Flint Sports Medicine Center, and Dr. Lawrence also argue summary disposition was proper because plaintiffs failed to present evidence to support Dr. Lawrence breached the standard of care. However, the trial court did not decide this issue. Rather, the trial court granted summary disposition based on its conclusion that plaintiffs failed to establish a question of material fact as to causation. Importantly, counsel for Greater Michigan Orthopedics, Greater Flint Sports Medicine Center, and Dr. Lawrence clarified multiple times they were only moving for summary disposition on the issue of causation—not breach of the standard of care. We decline to address the issue for the first time on appeal. See *Aguirre v Dep't of Corrections*, 307 Mich App 315, 326; 859 NW2d 267 (2014).

---

[5] "Although cases decided before November 1, 1990, are not binding precedent, MCR 7.215(J)(1), they nevertheless can be considered persuasive authority." *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012).

## IV. CONCLUSION

We reverse the February 2, 2023 order, which granted plaintiffs' motion to settle the record and granted partial summary disposition. We also reverse the December 19, 2022 order and the second February 2, 2023 order, which held Greater Michigan Orthopedics, Greater Flint Sports Medicine Center, and Dr. Lawrence were entitled to partial summary disposition on the basis of causation. See MCR 7.216(A)(7). We remand to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Michelle M. Rick
/s/ Sima G. Patel